Tony LADAKIS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 6336.

United States Court of Appeals
Tenth Circuit.

Oct. 7, 1960.

George E. Bridwell, Salt Lake City,
Utah (Bridwell, Reynolds & Cuthbert,
Salt Lake City, Utah, on the brief), for
appellant.

William J. Adams, Asst. U. S. Atty.,
Salt Lake City, Utah (A. Pratt Kesler,
U. S. Atty., Salt Lake City, Utah, on the
brief), for appellee.

Before PHILLIPS, LEWIS and
BREITENSTEIN, Circuit Judges.

PHILLIPS, Circuit Judge.

An indictment containing two counts
was returned against Ladakis, Benjamin
Maltz and Lyle Duncan Creel. The first
count charged a violation of the Mann
Act (18 U.S.C.A. § 2421) and the second,
conspiracy to violate the Mann Act (18
U.S.C.A. § 371). On a trial to a jury
Ladakis and Maltz were found guilty on
both counts. Creel was acquitted. The
court sentenced Ladakis to a term of im-
prisonment of one year and one day on

each count to run concurrently. He has appealed and urges as sole ground for reversal the alleged improper admission of evidence against him at the trial.[1]

None of the defendants testified at the trial. The evidence introduced by the Government established these facts:

Heidi Mickelsen, now Heidi Mickelsen Serre, worked as a barmaid in a lounge in Salt Lake City, Utah, where Creel was working as a bartender. About the middle of November, 1958, her employer discovered that she was under age and terminated her employment. Thereafter, on or about November 15 she returned to the lounge to receive her unpaid wages. At that time Creel approached her and discussed with her entering into the practice of prostitution. After some discussion, Mickelsen agreed to enter the practice of prostitution. Thereupon, Creel called a man by telephone, talked to him, and then had Mickelsen talk to him. The man identified himself to Mickelsen as Tony Ladakis. There was a brief discussion between her and Ladakis about her going to Portland to meet a man. Mickelsen agreed to make the trip. She met Ladakis on the following day and he then explained to her that she would meet Maltz and another man in Portland, but that "I was only going to be with one of them" and that he would give her clothes and money and that she was to split the money with Ladakis and Creel on her return to Salt Lake City. On November 16, Ladakis took Mickelsen to the Salt Lake City airport and purchased her a one-way ticket to Portland. Mickelsen traveled by air from Salt Lake City to Portland on the ticket purchased by Ladakis. She was met at the airport in Portland by Maltz and another man. They proceeded to the Hotel Multnomah. She stayed at the hotel with Maltz for a period of three days, having sexual intercourse with him during such period. Maltz purchased clothing for Mickelsen and gave her money. After Mickelsen had been in Portland three days, she told

Maltz she desired to return to Salt Lake City, and he purchased an air line ticket from Portland to Salt Lake City, gave the ticket to her, took her to the airport, and placed her on the plane en route to Salt Lake City.

After evidence of the above facts had been adduced, the United States made an offer of proof, in the absence of the jury, in which it offered to prove by Lowell G. Robinson, a Salt Lake City police officer, that in the latter part of 1956 or the early part of 1957, he was concealed in a clothes closet adjoining a room occupied by Nancy Collingsworth and that he overheard a conversation between Ladakis and Collingsworth in such room in the course of which Ladakis proposed to Collingsworth that she enter into the practice of prostitution. Following the offer of proof, Miller, counsel for Ladakis, objected on the ground that the evidence was too remote and was inadmissible as proof of another offense to show intent.

When called as a witness, Robinson testified that he was in the clothes closet of Collingsworth's apartment in February, 1957, and that Collingsworth was in the apartment; that while he was in the closet Ladakis came to the apartment; and he further testified:

"Well, Mr. Ladakis came in and asked Miss Collingsworth if she was still game to go through with her plans or if she was going to chicken out. And she told him to be careful of his language, that she might have the place wired. He stated that he wasn't worried about the place being wired. She stated she might have a cop in her clothes closet. He stated he wasn't worried about that; that she could have a necklace made of them. She said then that she did have a cop in her clothes closet and he said that he had a man that would take care of her if she did have. She invited him to call this gentleman, which he did."

---

1. Another ground set forth in the statement of points is expressly abandoned in the brief of Ladakis.

He further testified that another gentleman arrived and that he then stepped out of the closet and found Ladakis and one Darrell Mitchell in the room and that he took them to the police station for questioning.

Prior to the relation of the conversation by Robinson, the court, at the request of Mr. Roberts, attorney for Creel, instructed the jury that the testimony was directed to Ladakis and should not be considered by them as against the other defendants, Creel and Maltz.

At the conclusion of Robinson's testimony the Government rested.

Thereafter, preceding the noon recess and in the absence of the jury, the following occurred: The court stated that although no motion had been made, he was concerned about the evidence of the witness Robinson and was uncertain as to the inference to be drawn therefrom. Roberts, attorney for Creel, stated: "If it were in my power, Your Honor, I would move to strike it out." The court then stated: "I think I'm going to strike it out." Roberts then stated: "I think it's almost ground for a mistrial. I'd like to think about that." The court then stated: "You make a motion for mistrial and we will start over again so you decide and make up your mind about two o'clock." Miller, on behalf of Ladakis, then moved to strike the testimony of Robinson. The court granted the motion. Miller and Hansen then requested time to consider a motion for a mistrial. The court then indicated they could confer with Roberts and make any motion they desired in the matter at the reconvening of the court at two o'clock that afternoon.

On the reconvening of court at two o'clock, none of the counsel for the defendants interposed a motion for a mistrial. Thereupon, the court instructed the jury that the testimony of Robinson had been stricken and that they should entirely disregard it for any and all purposes.

■ It is clear that the failure of counsel for Ladakis to make a motion for a mistrial was not due to inadvertence, but was a deliberate choice made after he had been accorded ample time by the court to decide whether he should seek a mistrial or rest on his motion to strike, which the court sustained, and on an instruction to the jury by the court to disregard Robinson's testimony. He thus deliberately chose to take the latter course and chance the verdict which the jury might return. He thereby waived his right to assert that the harm, if any, resulting from the admission of Robinson's testimony was not cured by the action of the court in striking such evidence and instructing the jury to disregard it. He could not thus risk the verdict of the jury and if it turned out to be adverse, raise the question that the error was not cured on appeal.[2]

■ Counsel for Ladakis assert that the error resulting from the admission of Robinson's testimony was so serious that this court should notice it of its own motion. In criminal cases involving the life or liberty of the accused, the appellate courts of the United States may notice and correct grave errors which seriously affect substantial rights of the accused, although not challenged by objection or motion in the trial court.[3] We do not regard this as such a case.

■ Moreover, ordinarily a court will not notice alleged error of its own motion where, as here, the failure to object in the trial court was not due to inadvertence. Furthermore, in the instant case the action of the trial court upon which

2.  Edwards v. United States, 6 Cir., 265 F. 2d 909, 910, certiorari denied 361 U.S. 845, 80 S.Ct. 98, 4 L.Ed.2d 83; Remus v. United States, 6 Cir., 291 F. 501, 510, certiorari denied 263 U.S. 717, 44 S.Ct. 180, 68 L.Ed. 522.

3.  Fed.Rules Crim.Proc. rule 52(b), 18 U.S. C.A.; Addis v. United States, 10 Cir., 62 F.2d 329, 331, certiorari denied 289 U.S. 744, 53 S.Ct. 688, 77 L.Ed. 1491; Fischer v. United States, 10 Cir., 212 F.2d 441, 444; Edgmon v. United States, 10 Cir., 87 F.2d 13, 15; Johnson v. United States, 318 U.S. 189, 200, 63 S.Ct. 549, 87 L.Ed. 704, rehearing denied 318 U.S. 801, 63 S. Ct. 826, 87 L.Ed. 1164.

the claim of error is predicated was acquiesced in and silently approved by counsel for the complaining party.[4]

Affirmed.

---

4. Johnson v. United States, 318 U.S. 189, 200, 63 S.Ct. 549, 87 L.Ed. 704, rehearing denied 318 U.S. 801, 63 S.Ct. 826, 87 L.Ed. 1164.