W. Vincent Grady, J.
This writ of habeas corpus raises two issues concerning the illegality of relator’s sentence of 30 years to life imposed by Mr. Justice Cumin for murder in the second degree after a jury trial in the Supreme Court, New York County.
i
DID SECTION 597 OF THE NEW YORK JUDICIARY LAW, AS APPLIED IN NEW YORK COUNTY, VIOLATE THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT AND THE RIGHT TO TRIAL BY AN IMPARTIAL JURY UNDER THE SIXTH AMENDMENT BY SYSTEMATICALLY EXCLUDING FROM GRAND AND PETIT JURIES INDIVIDUALS WHO HAD CONSCIENTIOUS SCRUPLES AGAINST CAPITAL PUNISHMENT?
This issue was raised by relator for the first time before the Second Circuit Court of Appeals which stated:
‘ ‘ In his reply brief, Fein for the first time also argues that the blue ribbon statute was unconstitutional on its face because its object was ‘ * * * to effect the exclusion * * * of all those individuals who had conscientious scruples against capital punishment. * * * Thus this statute assured the state of a jury whose members were partial to the prosecutor on the issue of guilt or innocence. ’ This argument in Fein’s reply brief came after (and no doubt in light of) the grant of certiorari by the Supreme Court in Witherspoon v. Illinois, 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. 2d 776 (1968). In that case the Court held unconstitutional the imposition of the death penalty in cases where persons with scruples against capital punishment were excluded from jury service, a holding explicity limited to death penalty cases and then only to sentence rather than conviction. Id. at 522 — 523, 88 S. Ct. 1770 n. 21 ; see Bumper v. North Carolina, 391 U. S. 543, 545, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968). The Court in Witherspoon did consider the argument that exclusion of jurors with scruples against capital *828 punishment precludes an impartial trial on the issue of guilt. The majority there said id. at 517-518, 88 S. Ct. at 1774.: ‘ We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. ’ While it is true that Witherspoon does hint, as the dissenters note, id. at 539, 88 S. Ct. 1770, that the law may change on a different record, the studies and reports cited to us are the same as those cited in the Court in Wither-spoon and Bumper. Thus, a different result could not be supported on the present law. However, we do not even reach the question. As pointed out above, this part of the challenge to the blue ribbon jury statute was first made in this court. Consequently, there was not only no opportunity for the district court to evaluate the question, but Fein apparently has not exhausted his State court remedies by first making the argument raised here to the New York State courts. In these circumstances, we should refuse to pass on the claim without prejudice to Fein’s subsequently making it to the State courts.” (United States ex rel. Fein v. Deegan, 410 F. 2d 13, 22-23.)
The constitutionality of section 597 of the New York Judiciary Law, as applied in New York County, is properly before this court for determination in view of the directive from the Second Circuit Court of Appeals. However, that court did dispose in its opinion of a point raised by the relator on this writ which is connected with his attack on the constitutionality of section 597 of the Judiciary Law. Fein claims that the New York blue ribbon jury statute (Judiciary Law, former § 749-aa) under which he was tried over his objection, compounded the constitutional errors involved in the exclusion of scrupled jurors by further discrimination against blue collar workers and women. The court held it was bound by the decisions in Moore v. New York (333 U. S. 565) and Fay v. New York (332 U. S. 261) and that the New York blue ribbon jury statute was constitutional (Id. at p. 22).
Section 597 of the Judiciary Law in effect at the time of Fein’s conviction provided: “ No person shall be selected as a grand juror or as a trial juror in a criminal action where the crime charged is or may be punishable by death, who has stated to the county clerk in his examination under oath as required, that he has conscientious scruples against the death penalty and that such scruples would prevent him from returning an indictment, or returning a verdict of guilty, of any crime punishable by death. Such scruple shall not, however, hinder the selection *829 of such person to serve as a trial juror in any civil action or in any criminal action other than that specified above.”
The New York County Clerk provided a questionnaire form for prospective jurors which contained the following question: 1 ‘ Have you such views concerning the death penalty as would prevent you from finding a defendant guilty if the crime charged be punishable by death. ’ ’ It appears that a yes answer resulted in an automatic disqualification of the prospective juror.
Fein, seizing upon the language in the opinion of the Second Circuit Court of Appeals with respect to the Witherspoon and Bumper cases (Witherspoon v. Illinois, 391 U. S. 510; Bumper v. North Carolina, 391 U. S. 543), urges this court to grant a hearing at which Fein will establish the unconstitutional operation of section 597 of the New York Judiciary Law in New York County. Both Witherspoon and Bumper while holding that the exclusion of jurors with scruples against capital punishment did not require a reversal of the convictions, left open the possibility that a record could be made which would show that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction.
Fein’s burden in making such a record would be to show that section 597 of the Judiciary Law was misapplied in New York County in 1964 so as to exclude from the grand and petit juries individuals who were opposed to capital punishment but whose views would not prevent them from rendering a verdict of gulity in a capital case. To meet this burden, Fein states that he does not rely on studies, reports and polls, but proposes to produce at a hearing, if one is permitted by this court, the County Clerk of New York County, his records pertaining to the application of section 597 of the New York Judiciary Law and rules 2 and 17 of the Jury System of the City of New York and jurors from the 1964 New York County Special Jury panels from which the Fein special jury was drawn. In Witherspoon (id. at p. 517, n. 10) the Supreme 'Court was presented with “ a study based upon interviews with 1,248 jurors in New York and Chicago ” which found that juries from which those opposed to capital punishment were summarily excluded, were prosecution prone. The court held that this study was insufficient to prove that exclusion resulted in an unrepresentative jury on the issue of guilt. Fein seeks to question at a hearing jurors on the 1964 Special Jury Panel as to their views in 1964 towards capital punishment. The testimony of such jurors would carry no greater weight than the study based upon interviews with jurors which was rejected in Witherspoon. The examination *830 of the records of the New York County Clerk would be in the nature of a fishing expedition to prove Fein’s hypothesis and should not be permitted.
Fein alleges that the Grand Jury which indicted him and the special jury which convicted him were prosecution prone because those prospective jurors opposed to capital punishment were summarily excluded. This argument has been rejected in Fay v. New York (supra) and Moore v. New York (supra). The use of a special jury (Judiciary Law, former § 749-aa, repealed by L. 1965, ch. 778) did not violate Fein’s rights to a fair trial, to due process or to equal protection of the laws (People v. Jackson, 20 N Y 2d 440, 456, cert. den. 391 U. S. 928; People v. Donohue, 20 N Y 2d 824).
"While Fein now attacks the constitutionality of section 597 of the Judiciary Law, at no time prior to judgment did he object to the composition of the grand or special juries with respect to the exclusion of individuals opposed to capital punishment. Even before the commencement of Fein’s trial, his trial counsel, in opposing the District Attorney’s request for a special jury, made clear that on Fein’s behalf he would question the assembled panel of jurors as to conscientious scruples against capital punishment. It appears that during the selection of the special jury, Fein never registered any objection to the exclusion, without further inquiry, of jurors who opposed capital punishment as to whether their beliefs would prevent them from rendering a fair verdict. Such objection could have been raised (Code Crim. Pro., § 377, subd. 8; People v. Fernandez, 301 N. Y. 302). Fein’s trial counsel could have made a challenge to the panel concerning the systematic exclusion issue resulting in an unrepresentative jury pursuant to section 363 of the Code of Criminal Procedure. Upon such challenge, the court could have tried the sufficiency of the challenge (Code Crim. Pro., § 364) and upon a trial of the challenge, persons could have been examined to prove or disprove the facts alleged as the ground of the challenge (Code Crim. Pro., § 367). Now more than four years after his conviction, Fein seeks to prove that the exclusion of scrupled jurors resulted in an unrepresentative jury.
However, other than the studies, reports and polls submitted by Fein herein which were held insufficient in Witherspoon and Bumper (supra), no showing has been made to support the misapplication of section 597 of the Judiciary Law, by the County Clerk which requires a hearing. Moreover, Fein’s constitutional rights were not violated by the application of this section (People ex rel. McChesney v. La Vallee, 31 A D 2d 1, mot. for lv. to app. den. 23 N Y 2d 644, cert. den. 395 U. S. 970).
*831 In People v. Di Piazza (24 N Y 2d 342) an attack was made as' to the constitutionality of section 663 of the Judiciary Law which contains practically the same language as section 597 of the Judiciary Law. The Court of Appeals held: “ There is no merit to this argument. In the first place, no problem arises with such a statute where, as here, the defendant receives a sentence of .life imprisonment (see, e.g. Bumper v. North Carolina, 391 U. S. 543, 545). In the second place, the type of statute which the Supreme Court condemned in Witherspoon v. Illinois (391 U. S. 510) is one which would permit exclusion of a juror with conscientious scruples without regard to whether such scruples would prevent him from rendering a fair verdict on the question of guilt. Since the New York statute does not operate unless the conscientious scruples would prevent the rendition of a fair verdict, it is preserved from the unconstitutionality asserted by the defendant. (See, e.g. Witherspoon v. Illinois, 391 U. S. 510, supra; Crawford v. Bounds, 395 F. 2d 297.) More specifically, as the court indicated in Witherspoon, legislation would be stamped as invalid only if it allowed for a jury which falls ‘ short of that impartiality to which [a defendant] was entitled under the Sixth and Fourteenth Amendments ’ (391 U. S. at p. 518).” (24 N Y 2d, at p. 354.)
The operation of section 597 of the New York Judiciary Law, as applied in New York County, did not prevent the rendition of a fair verdict on the issue of Fein’s guilt and did not substantially increase the risk of Fein’s conviction.
n
Dm THE TRIAL JUDGE’S VOÍf dire OF THE JURY DURING THE TRIAL, WITHOUT PETITIONER’S PERSONAL PRESENCE, VIOLATE SECTIONS 356 AND 427 OF THE NEW YORK CODE OF CRIMINAL PROCEDURE AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT?
On November 18,1964, towards the end of Fein’s trial, Fein’s trial counsel brought to the court’s attention a newspaper article concerning the trial that appeared in the New York Herald Tribune under the by-line of Jimmy Breslin. Upon the consent of Fein’s attorney and the prosecutor, the court ordered the jury to retire to the jury room so that the court could ask the jurors if they had seen the article. The following colloquy took place between the court and the Fein jury in the absence of Fein but in the presence of Fein’s attorney and the prosecutor:
*832 “ the court : It has been called to the 'Court’s attention that an article has appeared this morning on the first page of the second section of the Tribune. The whole column was in reference to this case. Have any of you gentlemen seen it?
‘1 a juror : I saw it.
“ the court: Did you read it?
*‘ a juror : I saw it but I didn’t read it.
“ the court: I cannot admonish you more strongly than I am at the present time, and I have advised you time and time again not to look at or read anything pertaining to this case. Now if you do so, gentlemen, you do so under penalty of a penal imprisonment. You have already been told that. Otherwise the whole case would have to be set aside and retried.
1 ‘ I tell you not to look at any papers or have anyone call anything to your attention concerning this case, or anything that may be written by anyone any place, at any time.
“ Now is that definitely understood?
“ Nobody has read this article?
“ jurors: No sir.”
Section 427 of the Code of 'Criminal Procedure provides that 1 ‘ After the jury have retired for deliberation ’ ’ and request instructions, upon their being brought into court, the instructions in felony cases must be given in the presence of the defendant. Since the jury had not yet retired for deliberation in the case at bar, Fein’s reliance upon a violation of this section is misplaced.
Section 356 of the Code of Criminal Procedure provides: “If the indictment be for a misdemeanor, the trial may be had in the absence [sic] of the defendant, if he appear by counsel but if the indictment be for a felony the defendant must be personally present.”
Fein relies on People v. Anderson (16 N Y 2d 282) and Evans v. United States (284 F. 2d 393) to support his claim that his absence from the jury room when the Trial Judge questioned the jury about the newspaper article was a violation of section 356 of the Code of Criminal Procedure and his constitutional rights under the Fourteenth Amendment. Both cases are distinguishable. Anderson involved a suppression hearing where there was a ‘1 taking of evidence ’ ’ and the court held there was a denial of due process and. a violation of section 356 of the Code of Criminal Procedure. In Evans the Judge gave instructions to the jury after they had retired for deliberation in the absence of the defendant although his counsel was present and the court held that the error was not cured by the court reporter’s later reading the instructions to the jury in the presence of the *833 defendant. There, additional instructions which constituted the law of the case were being read to the jury without the opportunity of the defendant to personally object to any part of the instructions. In the case at bar, no evidence was being taken and no instructions were being given to the jury. The Trial Judge was conducting a voir dire of the jury as to a newspaper article which was not evidence in the case, but merely some publicity about it which none of the jurors had read and only one had seen.
In the case of People ex rel. Lupo v. Fay (13 N Y 2d 253) relator was absent from the courtroom while there was being argued his counsel’s motion for a mistrial on the ground that requiring further deliberation by the jury would amount to coercing a verdict. The Court of Appeals in upholding the dismissal of the writ of habeas corpus stated: ‘ ‘ While not directly controlling on us, Snyder v. Massachusetts (291 U. S. 97; defendant absent during jury’s ‘ view ’ of the locus) is a sound, fair guide for decision in such cases. Due process, held the Supreme Court in Snyder, mandates the presence of a defendant at his felony trial to the extent only that his presence is necessary for a fair and just hearing of his cause and he must be deemed to have the absolute right to hear everything the jury hears (see United States v. Johnson, 129 F. 2d 954, affd. 318 U. S. 189) so that his may be the opportunity to confront his accusers and advise with his counsel. Justice Cakdozo wrote that the inquiry should be: whether the defendant’s presence at the particular trial stage had ‘ a relation, reasonably substantial to the fullness of his opportunity to defend against the charge ’ (Snyder v. Massachusetts, 291 U. S. 97, 105-106, supra). Application of that test here defeats the writ.” (13 N Y 2d, at pp. 256-257.)
Fein’s absence from the jury room while his counsel, the prosecutor and the Judge were questioning the jury about a newspaper article did not affect any substantial right of Fein and did not invalidate the subsequent judgment of conviction. The questioning of the jury was not a material part of the trial. Moreover, no motion was made for a mistrial because one of the jurors saw the newspaper article, nor is there any proof that that juror had formed an opinion as a result of seeing it. (See People v. Lynch, 23 N Y 2d 262, 270, 271.)
Petitioner previously alleged before the Federal District Court that he was denied a fair trial because of publicity surrounding his arrest and trial, which publicity included the Breslin article in the New York Herald Tribune. Judge Palmieri rejected this argument and held that petitioner was *834 accorded a fair trial (United States ex rel. Fein v. Deegan, 298 F. Supp. 359, 364).
It is unnecessary to consider the question of waiver since the relator’s absence at the particular trial stage had no relation reasonably substantial to the fullness of his opportunity to defend against the charge.
Accordingly, the writ is dismissed and relator is remanded to the custody of the Warden of Green Haven Prison.