**UNITED STATES of America**

v.

**Thomas M. HARLEY, Appellant.**

**No. 24552.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 22, 1971.

Decided July 28, 1971.

Mr. John Jude O'Donnell, Washington, D. C. (appointed by this court), for appellant.

Mr. Jerome Wiener, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Herbert B. Hoffman, Asst. U. S. Attys., were on the brief, for appellee.

Before ROBINSON and MacKINNON, Circuit Judges, and DAVIES,* United States District Judge for the District of North Dakota.

DAVIES, District Judge:

Thomas M. Harley, the appellant here, was tried to a jury in a two-count indictment charging violations of the federal narcotics laws, 26 U.S.C. § 4704(a) and 21 U.S.C. § 174. The trial jury found him guilty on both counts, and he was thereafter sentenced to the custody of the Attorney General for a period of three to ten years on count one of the indictment and ten years on count two, the sentences to run concurrently. The instant appeal was thereafter perfected.

The salient facts necessary to an understanding of our decision are these: On the evening of January 16, 1970, Sharon Williams, 16, and Brenda Hardy, 19, went to Appellant Harley's apartment in Princeton Place, Washington. There was some discussion between the girls and Harley, after which he requested Brenda Hardy to go out and buy him cigarettes, which she did. Then, although Harley was allegedly working on a program to help and rehabilitate drug users, the record shows he took tin foil wrapped narcotics out of his shirt pocket and gave some to each girl. Both Harley and the girls injected narcotics into their bodies. Early the next morning, January 17th, Sharon Williams left Harley's room, but Brenda Hardy remained there.

In late afternoon of January 17th two metropolitan police officers went to Harley's room in Princeton Place after notification of a death there. They were Detective Manning and Officer Hill. Both testified they saw the dead body of Brenda Hardy lying on the bed in Harley's room. Without any objection, Detective Manning testified an autopsy had been performed on Brenda Hardy's body, disclosing that her death was occasioned by heroin intoxication.[1] Officer Hill

---

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

1. Appellant himself, without being asked, volunteered on direct examination that

corroborated Detective Manning's testimony, and related that a closet door was open and that he saw some capsules in a clear plastic bag hanging inside. Detective Manning retrieved the capsules, which contained only a white residue, but in the process noticed an aluminum foil protruding from appellant's jacket in which was found enough heroin for 200 to 300 capsules. It is the aluminum foil containing the narcotics which is the subject of this indictment. When Brenda Hardy was sent by Harley to "run to the store" for some cigarettes, she wore Harley's jacket on that mission, the identical jacket in which the aluminum foil of heroin was found.

On the state of the record it is highly improbable that a jury would believe, as indeed they quite obviously did not, that Brenda Hardy obtained or possessed any heroin or that the aluminum foil in Harley's jacket was owned or placed there by anyone other than Harley himself.

In any event, despite appellant's protestations the question is not whether the evidence was admissible in the posture of this case. It was. It is a matter of credibility not admissibility. Its relevance cannot, we think, be questioned. It is worth noting that appellant himself testified that Brenda Hardy "wasn't gone but five minutes"[2] and to suggest that the girl could have gotten heroin in the amount and of the value here involved, in five minutes, and deposit or secrete it in Harley's jacket, is to tax credulity to the breaking point. It is readily apparent that the jury did not believe this explanation and it is axiomatic that the credibility of witnesses is a matter for the jury, not for the trial court and assuredly not for an appellate body.

Appellant insists that there exists plain error in this case because the Government developed the facts and circumstances of Brenda Hardy's death in Harley's room. We reiterate, there was no objection on trial to the testimony with respect to the autopsy findings on Brenda Hardy's body. The issue of ownership of the heroin was crucial, and evidence of the causes of Brenda Hardy's death was not inflammatory; it was relevant and inescapable considering the nature of the offense charged and the totality of the setting in which Harley was found.

The officers properly testified to notification of a death in appellant's room in order to justify their coming there. Had they come simply to search for narcotics, the incriminating evidence, from anything that appears in the record, would have been inadmissible for lack of probable cause. The officers' reference to the dead body served to indicate that the officers performed their duty by locating the body and determining that it was lifeless; the recovery of the heroin in the closet came as an adjunct to the discharge of that duty.

In view of the fact that there was uncontradicted testimony that Harley had used the narcotics equipment only the day before, the testimony with respect to the needles and other narcotics equipment found in the hamper in the common bathroom does not appear to us to be of such importance as to characterize it as prejudicial. The record is barren of any testimony with respect to water or toilet facilities anywhere in Harley's room, and we think in the light of the trial transcript the questions raised were properly left to the jury.

The effect of Harley's testimony attempting to fix the accountability for needles and narcotics equipment in the hamper on the dead woman, Brenda Hardy, obviously was not lost on the trial jury. The testimony of the two police officers with respect to the location of the hypodermic needles in the hamper and a photograph of the needles therein was actually exculpatory of appellant, if the jury believed, as they plainly did not, Harley's testimony that Brenda Hardy

Brenda Hardy had died from epileptic seizure and overdose of narcotics. (Tr. 56).

2. (Tr. 49).

had removed something, "papers and what not," [3] from her own coat and placed it in Harley's jacket just before going to the store for cigarettes, wearing Harley's jacket. We think there is no merit to appellant's claim of prejudicial or plain error,[4] and that the evidence received concerning Brenda Hardy's death and the causes thereof were necessary and indeed inevitable if the jury were to be fully informed.

The appellant has raised other issues, directly or inferentially, which have received the careful consideration of this Court, but which are without merit. Finding no error in the District Court's proceedings the judgment is affirmed.

---

3. (Tr. 49).

4. Appellant in his brief cites Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943), for the proposition that the Supreme Court has forbidden inquiry into collateral crimes if it is unconnected with the offense charged. Concededly this is still the state of the decisional law. Aside from the fact that Johnson was also a criminal case, we fail to see how reference to it aids in the instant case. Johnson was a federal income tax evasion case, totally different from appellant's case here. A careful reading of Johnson discloses that Johnson was relying upon Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077 a case decided before the turn of this century, but which is still good law.