FEDERAL DEPOSIT INSURANCE COR-
PORATION, As Liquidating Agent for
Republic Bank of Kansas City, Plain-
tiff,

v.

Preston KERR, Presco Industries, Inc.,
d/b/a Ellett Brothers, Ray Adams,
Trustee for Ellett Brothers, Inc., Tusca-
rora Corporation, and Tuscarora Ac-
quisition Company No. 6, Inc., Defend-
ants,

and

Tuscarora Acquisition Company No. 7,
Inc., Chilton Ellett, Allan C. Watkins,
Trustee for the unsecured creditors of
Ellett Brothers, Inc., Bancamerica
Commercial Corporation, Eagle Oil &
Development, Inc., and Leroy G. Bailey,
Jr., and Robert D. Gorham, Jr., Addi-
tional Defendants.

No. C–C–85–0074–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Sept. 10, 1986.

See also, D.C., 111 F.R.D. 476.

Gaston H. Gage, I. Faison Hicks, Parker,
Poe, Thompson, Bernstein, Gage & Pres-
ton, Charlotte, N.C., Jeffrey S. Hacker,
Area Sr. Atty., Federal Deposit Insurance
Corp., Dallas, Tex., John S. Gordon, Harley
Blosser, Gordon & Gordon, Kansas City,
Mo., for plaintiff.

Ray Adams, Overland Park, Kan., Philip
D. Lambeth, Harkey, Fletcher & Lambeth,
Edgar Love, III, George C. Covington,
Kennedy, Covington, Lobdell & Hickman,
C. Richard Rayburn, Jr., Jim Smith, Moore,
Van Allen, Allen & Thigpen, Charlotte,
N.C., Michael J. Mahoney, Baker & Hostet-
ler, Cleveland, Ohio, Sheila Janicke, David
Schlee, Smith, Gill, Fisher & Butts, Kansas
City, Mo., Rebecca L. Jackson, Baker &
Hostetler, Washington, D.C., Stuart N.
Bennett, Carl A. Eklund, Mark L. Ross,

Roath & Brega, P.A., Denver, Colo., Harriet E. Styler, Salt Lake City, Utah, for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court upon Motion of Plaintiff, Federal Deposit Insurance Corporation ("FDIC"), to compel deposition answers of Robert Griffin and Defendants Preston Kerr and Ray Adams.

The Motion relates to certain telephone conversations which occurred in early 1985 in connection with the sale of Presco Industries, Inc.'s ("Presco") assets, the underlying transaction of which the FDIC complains.

The conversations relevant to this matter involve the following individuals:

(1) Defendant Preston Kerr ("Kerr");

(2) Robert Griffin ("Griffin"), Kerr's attorney with respect to the transactions complained of;

(3) Richard Smolev ("Smolev"), attorney for BancAmerica Commercial Corporation ("BACC") with respect to the transactions complained of; and

(4) Michael Horvitz ("Horvitz"), attorney for Kirland Capital Corporation ("KCC"), a corporation which had expressed an interest in the possible acquisition of Presco assets.

It appears that the FDIC's Motion involves four different conversations. First, in his Affidavit submitted in support of the FDIC's Motion, Horvitz contends that in a conversation between himself and Smolev, Smolev stated that any sale of Presco assets would have to be negotiated directly with Kerr. Apparently, this conversation took place after Horvitz learned that Presco's stock may have been pledged to BACC. Kerr contends that the FDIC had the opportunity to inquire of Smolev into this matter, but has not done so.

Second, Horvitz and Kerr had a conversation on January 19, 1985, in which Horvitz alleges that Kerr stated that Smolev had reported the substance of the Horvitz-Smolev conversation to him, Kerr; that

Kerr stated that neither Horvitz nor his client should make any further efforts to contact Kerr's creditors, including the FDIC; and that if they did, Kerr would file a lawsuit against KCC. At the deposition, Kerr stated that he did not recall telling Horvitz not to contact his, Kerr's, personal creditors.

Third, Griffin and Kerr had a conversation prior to Griffin's conversation with Horvitz. Griffin and Kerr refuse to disclose the substance of this conversation on the grounds of attorney-client privilege.

Fourth, Horvitz' Affidavits states that he and Griffin had a conversation on January 20, 1985 at Kerr's request in which Horvitz was reminded that a lawsuit would be filed if Horvitz or his client tried to contact Kerr's personal creditors.

## MOTION TO COMPEL TESTIMONY OF GRIFFIN AND KERR

The questions which the FDIC seeks to compel Griffin to answer and which he previously refused are as follows:

(1) "Q. In your telephone conversation with Mr. Kerr, did he say to you that he had received a telephone call from Mr. Smolev regarding a previous conversation?" [Griffin Deposition, p. 32, line 10.]

(2) "Q. Did Mr. Kerr in his telephone conversation with you tell you that he had told Mr. Horvitz that neither Mr. Horvitz nor his client had any business contacting Mr. Kerr's personal creditors?" [Id. at p. 32.]

(3) "Q. Did Mr. Kerr in his conversation with you tell you that he had told Horvitz that only he, Mr. Kerr, had the right to transfer his Presco shares and that any transaction involving the purchase of such shares was to be negotiated with him and him only?" [Id. at p. 33.]

(4) "Q. Did Mr. Kerr say to you that he told Mr. Horvitz that his, Kerr's, lawyers had advised him that Horvitz' conduct had given rise to a right of action by Mr. Kerr against KCC and

he said that any further efforts to contact his creditors, including the FDIC, would result in his filing a lawsuit?" [*Id.* at p. 33.]

(5) "Q. Did Mr. Kerr in his telephone conversation with you say anything to you about telling anyone not to contact Federal Deposit Insurance Corporation?" [*Id.* at p. 34.]

The question which the FDIC seeks to compel Kerr to answer and which Kerr previously refused is as follows:

(1) "Q. Did you at any time in January 1985 ask Robert Griffin to tell anyone not 'to contact your personal creditors?" [Kerr Deposition at p. 62.]

The relevant portions of the Horvitz Affidavit with respect to both of these inquiries are as follows:

11. On Saturday morning, January 19, 1985, Ms. Shea-Stonum and I telephoned Mr. Smolev. In that conversation, Mr. Smolev said that his client was not in a position to control the disposition of Presco's assets or Mr. Kerr's Presco stock. He said that any sale would have to be negotiated directly with Mr. Kerr, and he offered to telephone Mr. Kerr to see if Mr. Kerr would be willing to discuss a possible sale with us.

12. On Saturday afternoon, January 19, 1985, I received a telephone call at my home from a man who identified himself as Preston Kerr. Mr. Kerr told me he had received a telephone call from Mr. Smolev regarding our conversation of that morning. Mr. Kerr said that neither I nor my client had any business contacting his personal creditors. He said that only he (Mr. Kerr) had the right to transfer his Presco shares and that any transaction involving the purchase of such shares was to be negotiated with him and him only. He said that his lawyers had advised him that our conduct had given rise to a right of action by Mr. Kerr against KCC, and he said that any

further efforts to contact his creditors, including the FDIC, would result in his filing a lawsuit. I told Mr. Kerr that my client's only interest was in acquiring the Ellett Brothers business and that I could not understand why he apparently wished to consummate a transaction which seemed less favorable than the KCC proposal. Mr. Kerr responded that he was obligated under his agreement with Tuscarora until January 22, 1985, but that his lawyers would contact us if the Tuscarora transaction did not close by January 22, 1985.

14. On Sunday, January 20, 1985, I received a telephone call at my home from Mr. Robert Griffin, who identified himself as Mr. Kerr's attorney. Mr. Griffin said he was calling at Preston Kerr's request to reiterate the substance of my conversation with Mr. Kerr. He said any attempt by KCC or me to contact Mr. Kerr's creditors would result in litigation. I told Mr. Griffin that I understood he would be contacting me if the Tuscarora transaction did not close on January 22, 1985, and he said he would.

The attorney-client privilege extends only to confidential communications and a communication is not confidential if it is intended to be disclosed to third parties. *United States v. Gordon-Nikkar*, 518 F.2d 972 (5th Cir.1975).

The subject matter of the first four questions asked of Griffin which he refused to answer and the question asked of Kerr which he refused to answer is referred to specifically by Horvitz in his Affidavit. There is nothing to suggest that the veracity of Horvitz' Affidavit should be regarded with question or doubt. Further, neither Kerr nor Griffin have affirmatively repudiated Horvitz' statements. Therefore, the Court finds that the communications relevant to the FDIC's Motion were disclosed to a third party, Horvitz, and, Kerr's and Griffin's claim of privilege is not valid.

Kerr and Griffin should respond fully to the questions asked of them, but *only* those questions. The inquiry should not go any further than what Horvitz' Affidavit refers to.

## MOTION TO COMPEL TESTIMONY OF ADAMS

The question which the FDIC seeks to compel Adams to answer and which he previously refused is as follows:

"Q. Could you tell us about that conversation or conversations with Preston Kerr? What did you say to him and what did he say to you?" [Adams Deposition at p. 33, line 14.]

This question followed a question of whether Adams had talked to Kerr in Charlotte about Presco stock that he held as a voting trustee. Adams was at that time and is now under a grand jury investigation and refused to answer the question on the ground of fifth amendment privilege.

The FDIC contends that since Adams had previously testified about his handling of the Presco stock, communications between him and Kerr are not privileged. In support of this contention, the FDIC relies on *Johnson v. United States*, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704, *reh'g denied*, 318 U.S. 801, 63 S.Ct. 826, 87 L.Ed. 1164 (1943), where the Court stated that a criminal defendant's offer of testimony upon any fact acted as a waiver of his fifth amendment privilege as to all other relevant facts. *Id.* at 195–96, 63 S.Ct. at 552–53.

Adams contends that, unlike the case of *Johnson*, he has not taken the stand in his own behalf or otherwise voluntarily offered testimony. Rather, the FDIC has called upon him to give deposition testimony.

■ The privilege applies to any proceeding, wherever the answer might tend to subject the one giving it to criminal responsibility. *McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924). In the situation of a civil deponent seeking to invoke the privilege, he should "answer only those questions he can an-swer without running a risk of incriminating himself." 8 C. Wright and A. Miller, *Federal Practice and Procedure: Civil § 2018* (1970). *See also National Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595 (3d Cir.1980).

In the instant case, Adams apparently did precisely what he was required to do by appearing for the deposition and asserting his privilege to specific questions. The FDIC has not shown how Adams' conduct acted as a waiver of his fifth amendment privilege. Further, it appears that the parties agreed at the commencement of Adams' deposition that he would testify as much as he could, consistent with is privilege. The Court is, therefore, of the opinion that Adams should not be compelled to answer the FDIC's question.

## CONCLUSION

IT IS, THEREFORE, ORDERED that (1) the FDIC's Motion to compel deposition testimony of Kerr and Griffin be *GRANTED;* and Griffin shall answer the first four questions asked of him and Kerr shall answer the question asked of him. The FDIC shall not inquire of Kerr and Griffin into any matters which are not specifically referred to in the Affidavit of Horvitz; and (2) the FDIC's Motion to compel deposition testimony of Adams is *DENIED.*