513 F.2d 764
 Jerome FLORES, Jr., Petitioner-Appellant,
v.
W. J. ESTELLE, Director, Texas Department of Corrections,
Respondent-Appellee.
Augustine Mendoza ORTEGA, Petitioner-Appellant,
v.
W. J. ESTELLE, Director, Texas Department of Corrections,
Respondent-Appellee.
 Nos. 74-3860 & 74-3868.
 United States Court of Appeals,
Fifth Circuit.
 May 30, 1975.
 
 Thomas E. Roberts, Dallas, Tex. (Court-appointed), for petitioner-appellant in 74-3860.
 Joe Dibrell, George R. Bedell, Marc Perlmutter, Asst. Attys. Gen., Austin, Tex., for Estelle.
 William R. McGarvey, Dallas, Tex. (Court-appointed), for petitioner-appellant in 74-3868.
 Appeals from the United States District Court for the Northern District of Texas.
 Before GOLDBERG, CLARK and GEE, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 Appellants pursue habeas relief from state murder convictions. In view of our earlier opinion[1] wherein the facts are set out in full, we note only that they were driver and gunner in a vehicle from which one Villareal was shotgunned to death and his companion, Garza, was wounded. Garza was the sole witness, and he and the dead man had been drinking together.
 
 
 2
 At trial, the defense subpoenaed a Dr. Mason, the toxicologist for Dallas and Dallas County, to produce blood-test records on Villareal and Garza. During Mason's examination, he stated that he had brought only the Villareal records but could have Garza's there in minutes with a telephone call. He then testified to a blood-alcohol concentration in the dead man of .207 percent but refused to render an opinion whether this indicated intoxication on grounds he had not been "retained" as an expert. The trial court declined to compel the answer. The state appellate court found this to be error, but without injury to the defendant. The habeas court agreed and found the error harmless without hearing.
 
 
 3
 On appeal we agreed the refusal was error, but remanded for an evidentiary hearing to permit the state to try to show the error harmless beyond reasonable doubt.[2] We noted that Mason's refusal to opine as to Villareal's intoxication, and the court's refusal to make him do so, were sufficient warrants of a like course of events as to Garza's condition, a critical question since the convictions largely rested on his powers of observation. Again the matter comes before us, and again it is unnecessarily complicated. Not without difficulty, we affirm.
 
 
 4
 ( 1) In remanding, we observed that Texas might prevail ". . . by showing that there was sufficient other evidence of the extent of Garza's intoxication, or by showing that Dr. Mason's testimony, based on the toxicology of Garza, would have been that his powers of observation were not significantly impaired . . . ." 492 F.2d at 713. These observations were made on the assumption that, since at the former hearing Mason had offered to procure Garza's blood-toxicology records forthwith, there were some to procure. On remand, however, it was made to appear that there neither were nor ever had been such records, and the trial court so found. Based on this finding, the court concluded that the state judge's erroneous refusal to require Mason's expert opinion on Garza's condition was harmless, since there were no records on which he could have rested it; and that the jury had before it all the evidence there was regarding Garza's condition. On appeal to us the basic complaint is that the evidence showing there were no records on Garza is hearsay and that, therefore, the sole evidence upon which the court below found the state's burden of proof discharged was incompetent. Since it undoubtedly is hearsay, a troubling question is presented for decision.
 
 
 5
 That question is whether the fact finding below that no toxicology records ever existed on Garza is, because based solely on matter technically hearsay, clearly erroneous. In commencing our brief inquiry, we note that while the Texas courts deny to hearsay evidence any probative force whatever, even though not objected to,[3] our rule is otherwise: unobjected-to hearsay may be considered by the trier of fact for such probative value as it may have. United States v. Pearson, 508 F.2d 595, 596 (5th Cir. 1975).[4] Even so, we may still reverse a conviction based on such hearsay evidence if there has been a plain error affecting substantial rights. Smith v. United States, 343 F.2d 539 (5th Cir.), cert. denied, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965). We also bear in mind the Supreme Court's admonitions against ". . . the magnification on appeal of instances which were of little importance in their setting,"[5] and Justice Frankfurter's reiteration in stronger terms the following year:
 
 
 6
 In reviewing criminal cases, it is particularly important for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution.
 
 
 7
 Johnson v. United States, 318 U.S. 189, 202, 63 S.Ct. 549, 555, 87 L.Ed. 704, 713 (1943) (concurring opinion).
 
 
 8
 Careful reading of the state court record and of the proceedings of our district court on remand is instructive. From the former we learn that, though Mason refused to testify as an expert, Dr. Walter Hofman, a physician-forensic pathologist and Dallas County medical examiner, had already testified in such a manner as to make the testimony of Mason merely cumulative of Hofman's expert opinions. Hofman admitted, for example, that the .207 percent blood-alcohol reading for Villareal was more than twice that required for conviction in Texas of driving while intoxicated.
 
 
 9
 From the latter, it is apparent that the technically hearsay nature of the demonstration that no records existed about Garza's condition was very much in the minds of defendants' counsel: the evidentiary portion of that hearing runs to about twenty pages of transcript, on the sixth page of which counsel remarks that ". . . we are now relying on what might be presented as hearsay evidence to be garnered from the records. . . ." Yet six pages later, when Mason returned from a telephone call to his secretary to report that no records existed, no objection was made to his testimony. And eight pages further on counsel secured the doctor's admission that it was on his secretary's search at his direction that his testimony of non-existence of a record rested. Yet no motion to strike followed. We are unable to avoid the conclusion that we are in the presence of the sort of conscious and intentional failure to save the point which was treated in Johnson v. United States, 318 U.S. 189, 200-201, 63 S.Ct. 549, 555, 87 L.Ed. 704, 713 (1943):
 
 
 10
 "It is true that we may of our own motion notice errors to which no exception has been taken . . . . (b)ut we are not dealing here with inadvertence or oversight. . . .
 
 
 11
 . . . We cannot permit an accused to elect to pursue one course at the trial and then, when that has proved unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him."
 
 
 12
 So in our case: counsel were well aware at the hearing of the technical incompetence of this evidence, indeed they referred to this deficiency and asked questions designed to highlight it, but they never objected to its receipt, doubtless because they knew the deficiency would speedily be made good by the appearance of the secretary or the technical custodian and they were in no real doubt about the want of such a record. In these circumstances an imaginative reliving of the trial persuades us that no abstract question of evidence law should here control. We are fortified in our conclusion by the fact that hearsay evidence regarding various static matters such as business and official records has traditionally been received by the courts, under appropriate safeguards. It is fairly arguable that under modern procedures for proving up regularly kept records (or their absence) the information offered by Mason that no records on Garza existed in the official files was admissible anyhow.[6] At all events, any deficiencies in the procedures were technical only: Mason was not, strictly speaking, their custodian at the time of his testimony, though he was at the time the record would have been made; the search was conducted by his secretary at his direction, not by him. But Mason testified unequivocally that two searches had been made for the record, both as a result of directions by him and at least one under his supervision, and that if a test had been made on Garza the record would be there since during his years as director no record had ever been lost.
 
 
 13
 Affirmed.
 
 GOLDBERG, Circuit Judge (dissenting):
 
 14
 Respectfully, I dissent.
 
 
 15
 Our previous decision[1] remanded this case for an evidentiary hearing, and located the burden on the State to establish beyond a reasonable doubt that Dr. Mason's testimony on the toxicology of Garza would not have favored the defense at the state court trial.[2] We held that if the state failed to meet its burden, the writ of habeas corpus must be granted to Flores and Ortega.
 
 
 16
 On remand the State subpoenaed Dr. Mason to appear with "any medical records that you may have on Juan Garza." It quickly appeared at the hearing that Mason had been the Director of the Criminal Investigation Laboratory for the City and County of Dallas, and therefore the official custodian of the relevant toxicology records, at the time of Flores' and Ortega's state court trials but that he was no longer so employed and no longer the official custodian of the toxicology records at the time of the hearing. It next appeared that Mason had brought with him no toxicology records on Garza.[3] Moreover, Dr. Mason was unwilling to testify that his failure to bring the subpoenaed Garza records indicated that no such records existed.[4] Counsel for Ortega had evidently assumed that a toxicology report on Garza existed, and claimed surprise at Mason's testimony.[5] He then suggested that Mason might be allowed to telephone his secretary, evidently to help determine what course the hearing should then take. The court answered that Mason would be given an opportunity to telephone. At this point counsel for Ortega presented the hearsay objections recited in the majority opinion. Stopping counsel in mid-sentence, the court responded, "Well, we are not quite to that stage yet," and proceeded to announce that "I am going to give him an opportunity to find out (by telephone), and if the records are there then we will decide what to do, and if they are not there we know about that."[6] After an eight-minute recess, Mason returned to testify that based on his secretary's information he knew that there was no record of any relevant toxicology report on Garza.[7] No hearsay objection was raised when Mason's telephone conversation was admitted into evidence to prove the non-existence of the tocicology report, although, as the majority opinion points out, Ortega's counsel framed his interrogation to expose the unreliability of the testimony received. There were no further witnesses.
 
 
 17
 Based on Mason's testimony, the district court concluded that, given the absence of a toxicology record on Garza, Mason would have given no toxicology testimony favorable to Flores and Ortega at their state murder trial.
 
 
 18
 The sole question on this appeal is whether the district court properly relied upon Mason's hearsay testimony in concluding that there was no toxicology report on Garza. I would hold that the district court committed plain error in accepting the state's telephone hearsay proof, and in so proceeding violated the clear mandate of this court and prejudiced the right of petitioners. Our previous decision in this case returned it to the district court for an evidentiary determination of a single and specified point. Our mandate neither contemplated nor envisaged that this critical issue would be determined upon incompetent evidence immune from cross examination, and to rely entirely upon such proof is inconsistent with the rights of the petitioners and the intent of our directions.
 
 
 19
 The majority properly recognizes the law in this Circuit that accords inadmissible but unobjected-to hearsay whatever probative weight it can carry.[8] United States v. Pearson, 5 Cir. 1975, 508 F.2d 595, 596; Smith v. United States, 5 Cir., 343 F.2d 539, 541-42, cert. denied, 1965, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99; Newsom v. United States, 5 Cir. 1964, 335 F.2d 237, 238. Moreover, they are correct in their conclusion that the contested hearsay objection was not properly preserved below. But this is only the starting point for our analysis, for as the majority also appears to concede, a habeas corpus judgment based on hearsay may be reversed on account of plain error affecting substantial rights.[9] The admission of Mason's hearsay testimony was plain error affecting substantial rights. Here, as in an ordinary criminal action, the burden rested on the State to prove its facts beyond a reasonable doubt.[10] In this case the State's entire proof was plainly hearsay and it is well established that its erroneous admission affected substantial rights. Research discloses no case in which we have permitted a criminal conviction to withstand a plain error challenge when its proof rested critically on hearsay. Compare, e. g., Newsom v. United States, supra. Rather, as we cautiously explained in Jenkins v. United States, 5 Cir. 1968, 404 F.2d 873, 874, "The admission of hearsay evidence, . . . in the absence of any objection, is not plain error affecting substantial rights where other evidence is sufficient to support the verdict. Smith v. United States (supra )" (emphasis added). Moreover, our reliance in Smith v. United States, supra on Glenn v. United States, 6 Cir. 1959, 271 F.2d 880, fortifies the recognition that a judgment in a criminal cause based solely on unobjected-to but objectionable hearsay cannot survive a "plain error" attack on grounds of insubstantiality. In Glenn the Sixth Circuit held:
 
 
 20
 In this case, where the evidence would have been insufficient to sustain appellant's conviction had the improper testimony been excluded, this Court would be remiss in its duty to see that fundamental justice is done if it failed to note the plain error inherent in the proceedings below.
 
 
 21
 271 F.2d at 883. See generally Naples v. United States, 1964, 120 U.S.App.D.C. 123, 344 F.2d 508, 513; United States v. Dunn, 6 Cir. 1962, 299 F.2d 548, 554; Pinkard v. United States, 1957, 99 U.S.App.D.C. 394, 240 F.2d 632, 633; see also Minor v. United States, 8 Cir. 1967, 375 F.2d 170, 173, cert. denied, 389 U.S. 882, 88 S.Ct. 131, 19 L.Ed.2d 177.
 
 
 22
 Apparently, but not explicitly, recognizing the aptness of these authorities, the majority rests its affirmance on the conclusion that the habeas petitioners waived their hearsay objection in the proceeding below. I cannot agree. To begin with, waiver must be shown by something more than failure to object; otherwise, we would never remedy plain error. Indeed, the standard derived in Johnson v. United States, 1942, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704, is much higher. In Johnson the defendant's counsel raised a certain objection to the prosecutor's closing argument at trial, and an exception was noted; the court then recessed for the day. The next morning, before the court gave its charge, defense counsel explicitly withdrew all the objections recited the evening before. Counsel then proceeded to renew and reiterate some of the objections previously raised, but failed to renew the exception ultimately addressed to the Supreme Court. Following conviction, and affirmance by the Third Circuit, the Supreme Court granted certiorari and affirmed. In its opinion the Court refused to address as a question of plain error the issue which counsel had failed to renew, and held instead that the point had been waived, because "we are not dealing here with inadvertence or oversight. . . . Plainly enough, counsel consciously and intentionally failed to save the point and led the trial judge to understand that counsel was satisfied." 318 U.S. at 200, 63 S.Ct. at 555, 87 L.Ed. at 713. Perhaps contrary to the majority here, I read Johnson as holding no more than it said: we are obliged to disregard error as being waived only when we are assured that counsel "consciously and intentionally" abandoned the point. In accord with this approach to Johnson, we have recently held in United States v. Davis, 5 Cir. 1974, 496 F.2d 1026, that we would not find a waiver of plain error in admitting objectionable but unobjected-to evidence except in the case of a Johnson v. Zerbst[11] "intentional relinquishment or abandonment of a known right or privilege."[12]
 
 
 23
 The record before us reveals that counsel for Ortega began to raise a hearsay objection immediately after the court indicated that the telephonic hearsay would be accepted, but that counsel was cut short by the trial judge, who then ruled explicitly that he would hear the results of Mason's telephonic communication with his secretary. In these circumstances I can agree that counsel for Flores and Ortega failed, whether through inadvertence or oversight, to perfect their objections with requisite specificity and persistence. But I cannot join in the majority's view that counsel waived objection, at least as waiver is defined in Johnson and Davis ; such a conclusion derives from nothing more than speculation. This is not a case where, as in Johnson, counsel raised the precise specification of error now claimed as plain error, and then abandoned it. Neither counsel for Flores nor counsel for Ortega suggested that Mason's hearsay testimony be received as proof that no record existed. Nor is this even a case in which we might reasonably judge that counsel silently disregarded the point as a tactical gambit in a complex trial[13]: there was only one question at issue and that issue was being proved by the State entirely through hearsay. In such a context, and where the objective events recorded in the transcript lend speculation no support, I am unwilling to attribute imaginary waiver strategies into the consciousness of counsel which any realistic conception of the circumstances of the hearing fairly assures were not there.
 
 
 24
 Moreover, I find this case particularly inappropriate for innovation of the strained approach to waiver which the majority adopts. First, the prejudice to the State from the absence of the petitioner's proper hearsay objection is extremely slight: the burden of carrying on the proceedings below for what must have been less than ten minutes to receive the State's hearsay testimony. Second, our duty to protect the solemnity of our previous mandate is relevant here. Our prior opinion called for competent and proper proof focused on a single point, to establish beyond a reasonable doubt whether the constitutional error at petitioner's trial was harmless beyond a reasonable doubt. Instead, the State offered, and the district court accepted, objectionable hearsay proof. I am unwilling to agree that our power to rectify plain error in the execution of our mandate may be defeated by so gossamer a conception of waiver by the parties our mandate was framed to protect.
 
 
 25
 One need not be a juridical soothsayer to predict that this evidentiary ventriloquism will have its cacophonous echoes. The rationale for exempting from hearsay objections records regularly maintained[14] is premised on the eyeball testimony of the custodian of the records or other qualified witness. Here we are wired for the hearsay testimony, with no opportunity to question the connection asserting the conclusion that in this particular case the toxicology reports were not in existence. The least that could be required would be that the only possibly qualified witness, the secretary, be subject to some type of examination concerning the method she used to find the records, and whether or not there might be some basis for belief that her search was not as exhaustive as it might have been in order to prove that no relevant records regarding the defendant were in existence. Thus, I would hold that the trial court plainly erred in admitting the State's hearsay evidence, and that that error was not waived under the standards of United States v. Johnson, and United States v. Davis, supra. When this case was remanded, we placed the duty on the State to demonstrate a single fact by legal evidence. The State failed properly to prove its point: it subpoenaed neither the record custodian nor one who had personal knowledge of the existence or non-existence of the relevant record. Now we are called upon to hold that the petitioner's neglect to object to the State's improper proof represented in spite of logic and self-interest a conscious decision which cuts off any review. I find the law to be contrary. I dissent.
 
 
 
 [1]
 Flores v. Estelle, 492 F.2d 711 (5th Cir. 1974)
 
 
 [2]
 Flores v. Estelle, supra
 
 
 [3]
 E. g., Cherb v. State, 472 S.W.2d 273, 279 (Tex.Cr.App.1971)
 
 
 [4]
 Nor do we in anywise stand alone. E. g., Diaz v. United States, 223 U.S. 442, 450, 32 S.Ct. 250, 56 L.Ed. 500 (1912); In re Holmes, 379 Pa. 599, 109 A.2d 523 (1954), cert. denied, 348 U.S. 973, 75 S.Ct. 535, 99 L.Ed. 757 (1955), where an adjudication of delinquency of a minor was affirmed solely, as to one charge, on hearsay evidence
 
 
 [5]
 Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680, 706 (1942)
 
 
 [6]
 Especially in a non-jury proceeding, see United States v. United Shoe Machinery Corp., 89 F.Supp. 349 (D.Mass.1950), disposed of later without mention of evidentiary question, 110 F.Supp. 295 (D.Mass.1953), aff'd, 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954). See also the new (and not yet effective) Federal Rules of Evidence 803(7), 805, 901(7)
 
 
 [1]
 Flores v. Estelle, 5 Cir. 1974, 492 F.2d 711, 713
 
 
 [2]
 Our previous decision acknowledged that the State's burden to establish the harmlessness of Mason's failure to testify regarding the toxicology of Garza could alternatively be met "by showing that there was sufficient other evidence (in the record before the State court jury) of the extent of Garza's intoxication." 492 F.2d at 713. The state did not attempt to make such a demonstration
 
 
 [3]
 Transcript at 15
 
 
 [4]
 Id
 
 
 [5]
 Id
 
 
 [6]
 Id. at 16
 
 
 [7]
 Although it is not entirely clear from the record, see id. at 27, it appears that during the short recess Mason's secretary was able to search the records at the Criminal Investigation Laboratory, and that she related to him facts known to her on the basis of her fresh check of the files, not her recollection of a previous investigation. At the time of the hearing below, Mason still occupied an office at the Laboratory, though he was no longer in charge of it, and evidently he retained a secretary there
 
 
 [8]
 Neither the State's brief nor the majority opinion actually argues that the hearsay testimony was properly admissible
 
 
 [9]
 The plain error review provided in Fed.Crim.R.Pro. 52(b) does not apply in terms to a habeas corpus proceeding, of course. Rather, Fed.Civ.R.Pro. 81(a) (2) applies the civil rules to habeas corpus proceedings "to the extent that the practice in such proceedings . . . has heretofore conformed to the practice in civil actions." Despite the absence of a plain error provision in the Civil Rules, however, we have in the past reversed civil judgments resting on plain error which infected the substance of the case. See, e. g., Clayton v. Burston, 5 Cir. 1974, 493 F.2d 429, 432 n. 4; Sheppard Federal Credit Union v. Palmer, 5 Cir. 1969, 408 F.2d 1369; Chagas v. Berry, 5 Cir. 1966, 369 F.2d 637, 641, cert. denied, 389 U.S. 872, 88 S.Ct. 161, 19 L.Ed.2d 154. And in cases involving plain errors of an evidentiary nature we have articulated our readiness to reverse on that account if justice so required. See, e. g., Colonial Refrigerated Transp., Inc. v. Mitchell, 5 Cir. 1968, 403 F.2d 541, 552; Fort Worth and Denver Ry. v. Harris, 5 Cir. 1956, 230 F.2d 680, 682; Louisiana and Arkansas Ry. v. Moore, 5 Cir. 1956, 229 F.2d 1, 2-3, cert. denied, 351 U.S. 952, 76 S.Ct. 849, 100 L.Ed. 1475; Dowell, Inc. v. Jowers, 5 Cir. 1948, 166 F.2d 214, 221, cert. denied, 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759. Moreover, habeas corpus proceedings present a special case for the application of plain error principles. The Supreme Court has acknowledged in Harris v. Nelson, 1969, 394 U.S. 286, 293-94, 89 S.Ct. 1082, 1087, 22 L.Ed.2d 281, 287, that the application of the "civil" label to habeas corpus actions is "gross and inexact"; and at least as to discovery proceedings the Court has eschewed strict adherence to the civil rules in habeas cases in favor of a more flexible approach. The policies which underlie the plain error rule's protections of criminal defendants' enormous interests against adversary disadvantages in criminal trials, see generally 8A Moore's Federal Practice P 52.02(2) at 52-4 to 52-6, militate in favor of similar safeguards in habeas corpus. This factor suggests that the plain error doctrine innovated in ordinary civil matters in the interests of justice may be somewhat more readily invoked in habeas corpus cases. Certainly we may notice here the plain and clearly substantial default by the State and the district court below in failing to satisfy our previous mandate through proper and acceptable proof
 
 
 [10]
 Habeas corpus proceedings are civil in nature, but the burden on the state in this case was to show beyond a reasonable doubt the asserted harmlessness of the constitutional error in the state criminal court of denying Flores and Ortega the opportunity to interrogate Mason. Washington v. Texas, 1967, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019; Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705
 
 
 [11]
 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466
 
 
 [12]
 In Davis the admission of the objectionable evidence was statutorily prohibited; once the substantiality of the error in admission is established, however, whether the proscription is or is not statutory would seem inconsequential
 
 
 [13]
 See, e. g., United States v. Rosenberg, 2 Cir. 1952, 195 F.2d 583, cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652
 
 
 [14]
 See 28 U.S.C. § 1732; Fed.R.Evid. § 803(6), (7); Vernon's Tex.Rev.Civ.Stat.Ann. art. 3737e