**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Dale Edward SUDDUTH, Defendant-Appellant.**

**No. 71-1600.**

United States Court of Appeals,
Tenth Circuit.

April 20, 1972.

---

Richard J. Spelts, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief) for plaintiff-appellee.

Tom W. Lamm, Denver, Colo., for defendant-appellant.

Before HILL, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Sudduth was convicted by a jury on one count of a two-count indictment charging him with selling heroin not in pursuance of a written order in violation of 26 U.S.C. § 4705(a). Count II charged him with carrying a firearm "unlawfully" during the commission of a felony charged in Count I in violation of 18 U.S.C. § 924(c). Count II was dismissed by the trial court on the ground that it did not state a separate crime. The Government appealed from the trial court's dismissal of Count II in a separate proceeding before this court.

We have recently held in United States v. Sudduth, 457 F.2d 1198 (March Term 1972) in an opinion authored by Judge Seth that the trial court, 330 F. Supp. 285, erred in holding that 18 U.S. C. § 924(c) did not create a separate crime. We vacated the dismissal on Count II and the one-year sentence imposed thereunder for further proceedings.

On January 26, 1971, about 9:50 p. m. undercover agent Ronald Wilson met Sudduth and others in a parking lot of the Regency Rodeway Inn, Denver, Colorado, to negotiate a heroin sale. Sudduth asked Wilson to follow him to 32nd and Ivy where Wilson gave Sudduth $80.00. Sudduth left to obtain the heroin.

Sudduth returned to 32nd and Ivy at 1:10 a. m. on January 27, 1971. He asked Wilson if he was a police officer. Wilson answered that he was not. Sudduth then pulled out a gun stating it was good because he had not come prepared. Wilson paid Sudduth $800.00 for the heroin. Sudduth made a second sale to Wilson at a later date. He was arrested on February 7, 1971 after a shoot-out with federal agents in which he was seriously wounded.

Sudduth testified that he did sell a substance to Wilson but that it contained Nytol or Sominex which he and a Mr. Dixon purchased at a drug store. He said that he and Dixon uncapped the capsules and put the powder in a plastic bag.

The prosecution's chemist, Mr. Schreiber, testified that the substance con-

tained .04% heroin, 3% methapyrilene, cornstarch, a large amount of salicylamide and a small amount of procaine. Salicylamide is found in both Sominex and Nytol. The defense chemist, Mr. Gebott, was requested by Sudduth's counsel prior to trial to test for Dormain and/or heroin. Gebott used one-five-thousandth of one-millionth of one gram for testing. He did not find heroin. Schreiber testified that with such a great dilution as Gebott used, heroin would never show up.

Sudduth contends that: (1) a substance which contains .04% heroin is not a "narcotic drug" sufficient to sustain his conviction; (2) he was denied the right to counsel at a critical stage of the trial; and (3) he was not adequately represented by counsel at his trial.

■ Sudduth concedes here that .04% heroin was in the substance he sold to Wilson. He alleges, however, that heroin is an opiate and that under 26 U.S.C. § 4731(g) the substance must have addiction-forming liability. Sudduth argues that .04% heroin does not have the requisite addiction-sustaining liability required for conviction. His contention has no merit.

Heroin is a derivative of opium under 26 U.S.C. § 4731(a) (2). It is not an opiate. Jordan v. United States, 345 F. 2d 302 (10th Cir. 1965); Verdugo v. United States, 402 F.2d 599 (9th Cir. 1968), cert. denied Turner v. United States, 397 U.S. 925 90 S.Ct. 931, 25 L. Ed.2d 105 (1970); Trotter v. United States, 359 F.2d 419 (2nd Cir. 1966). The quantity or harmfulness of the drug involved is of no consequence. A conviction will be upheld where any measurable amount is found. United States v. Kellerman, 432 F.2d 371 (10th Cir. 1970); United States v. Curbelo, 423 F. 2d 1204 (5th Cir. 1970); United States v. Wanton, 380 F.2d 792 (2nd Cir. 1967).

Sudduth alleges that he was denied assistance of counsel at a critical stage of the trial.[1] Sudduth contends that the

1. The following colloquy took place between the Court, counsel and Sudduth following the testimony:

"THE COURT: * * * This case troubles the Court a great deal. It has been shown that a subpoena for a witness who might be thought by the jury to be of great importance to the defense of this case was not issued until the day before trial. It has additionally been shown that the chemist employed at the request of defense counsel and at the expense of the government for some reason was not advised by defense counsel as to the substance of the testimony which would be offered by the defendant, and that due to that fact, the chemist made no analysis of the substance which forms the basis of this prosecution to ascertain whether the substance contained Sominex or Nytol.

These failures, the Court believes, are in no way attributable to the defendant. They are attributable, the Court believes, to the defendant's appointed counsel. * * *

The Court is fearful that on the record which has been made in this case this defendant may not have received a fair trial and that the *interests of justice may require that the Court declare a mistrial and appoint other counsel* for the defendant. *This the Court is willing to do if Mr. Sudduth so requests. Now, Mr. Sudduth, do you wish that?*

THE DEFENDANT: *No, sir.*

THE COURT: Mr. Sudduth, that is a decision which you may make, and I am certainly not going to urge that you make any other decision, but in making that decision *do you expressly waive any right to urge the matters to which the Court has referred and only those matters on appeal, or by way of a post conviction remedy?*

THE DEFENDANT: Your Honor, may I have time to think this over?

THE COURT: Mr. Sudduth, I think you should have time to think it over. How much time would you like?

THE DEFENDANT: An hour or so I think.

THE COURT: * * * Your request is reasonable, and you may have that, sir. * * *

*Now, Mr. Sudduth, what, if any, arrangements would you like to make to confer with anybody in thinking this matter over?*

THE DEFENDANT: Your Honor, I would like to talk to my lawyer first

decision he made to waive a mistrial was made without the benefit of advice of counsel because Mr. Young, defense counsel, stated that the decision was made by Sudduth and Sudduth's brother "out of our presence". Sudduth's appellate counsel argued that there was a strong possibility that Sudduth had lost confidence in his trial counsel and had chosen not to confer with him as a result of the trial court's admonishments. ▆▆▆ Sudduth was not denied the right to advice of counsel at a critical stage of the trial. The Court asked him what arrangements he "would like to make to confer with *anybody* in thinking this matter over," i. e., to request or waive a mistrial. Sudduth answered that he would talk to his lawyer and then to his brother. Now Sudduth complains that his choice to waive a mistrial was made without the assistance of counsel even though he conferred with his trial counsel. The fact that the "decision" was made outside of counsel's presence is no reason to hold that Sudduth was denied the assistance of counsel. Further, the fact that Sudduth's counsel had been reprimanded by the Court because of what the Court believed to be inadequate trial preparation is not a sufficient ground to hold that he was incompetent to confer with and advise Sudduth on the matter of mistrial. Sudduth exercised his right to confer with "anybody" when he informed the Court that he elected to talk to his lawyer and his brother. If Sudduth had requested independent advisory counsel at that stage, which he was given an opportunity to do, it would have been within the Court's discretion to grant the request.

Sudduth also contends that he was not adequately represented by counsel at trial. His chemist was not advised of

of all and I would like to talk to my brother and get some advice from him I think.

THE COURT: I think that request is completely reasonable. The Marshal can make some sort of arrangement to permit Mr. Sudduth to confer with his lawyer and brother.

MR. YOUNG: I would like to have the reporter read what Your Honor said about Mr. Sudduth waiving—

THE COURT: All I am saying is this, Mr. Young, that *if Mr. Sudduth wants a mistrial I will declare it, but if he doesn't want a mistrial I ask that he waive any of the errors or any of the problems which I have called his attention to.*

*I don't think he should have two bites at the apple; is that clear? Do you have any other questions, Mr. Sudduth?*

THE DEFENDANT: No Sir.

MR. SPELTS: So the Government is clear on this, *what the Court would be asking him to waive is any right subsequent to this trial to claim that he was represented by counsel who was not adequate?*

THE COURT: And who did not do his job because of his failure to subpoena a witness or failure to notify the chemist.

MR. SPELTS: *But the Court does not ask him to waive any other possible errors he may have?*

THE COURT: Absolutely not. Any errors I have made, you are free to take a shot at those. *The things that trouble me, that I have called your attention to, I do in a sense of trying to be fair to you, and I have told you that if you wish a mistrial I will declare one, but that if you don't wish a mistrial, I won't. It's just that simple.*

THE DEFENDANT: *Yes, I understand.*

THE COURT: The record should reflect that we have returned for further proceedings in Criminal Action 71–CR–82, the United States of America vs. Dale Edward Sudduth. What is the desire of Mr. Sudduth?

MR. YOUNG: He can speak for himself on this, if the Court please.

THE DEFENDANT: *Your Honor, I would like to go ahead on with the trial.*

THE COURT: Go ahead with the trial?

THE DEFENDANT: *Yes, sir, and waive a mistrial.*

THE COURT: Very well. You may do so. Will you please call the jury.

MR. YOUNG: I would like the record to reflect that this decision was made by the defendant and his brother out of our presence."

Tr. 295–300. (Emphasis Ours).

Sudduth's testimony and as a result no analysis was made for Sominex or Nytol. He contends that had his chemist known the probable composition of the substances, the testing procedures would have been different. While it is true that his chemist may have found that the substance did contain Sominex or Nytol, the record does not evidence prejudice in light of the Government chemist's testimony corroborating Sudduth to the extent that Sominex or Nytol was contained in the substance. Furthermore, Sudduth's testimony that he and Dixon purchased Sominex or Nytol at a drug store and poured the contents of those capsules into the bag was not refuted by the prosecution. The Government clearly rested its case on its evidence that heroin was present in the substance. Its chemist found heroin in the substance. Sudduth's chemist testified that no heroin was present.

Sudduth complains that his counsel did not attempt to subpoena Dixon until the day before trial and that his failure seriously prejudiced his defense. Dixon was not present to testify. Sudduth contends that Dixon would have corroborated his testimony that Dixon helped Sudduth uncap and bag the Sominex or Nytol purchased at the drug store. But here again we do not find prejudice. The Government did not attempt to impeach Sudduth's testimony in this regard. It concentrated on the affirmative aspect of its expert's test analysis that heroin was present in the substance sold by Sudduth to Wilson.

During oral argument Sudduth's counsel stated that when Sudduth informed the Court that he would not request a mistrial, he was confident that the jury would return a verdict of not guilty, in light of the testimony given by his chemist. This is consistent with a knowing and intelligent waiver found by the trial court in the entire context of the colloquy we have quoted. The trial court gave Sudduth a full opportunity to protect his rights under the circumstances. If the trial court had declared a mistrial without Sudduth's consent then Sudduth could not be tried again under the doctrine of double jeopardy. Simpson v. Florida, 403 U.S. 384, 91 S. Ct. 1801, 29 L.Ed.2d 549 (1971); Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); Tipton v. Baker, 432 F.2d 245 (10th Cir. 1970); Cornero v. United States, 48 F.2d 69 (9th Cir. 1931).

■ Sudduth's waiver of a mistrial constituted a knowing and intelligent waiver of his right to contend that he was not afforded adequate trial counsel on appeal. The trial court so found and the record supports this finding. Johnson v. Zerbst, Warden, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Puckett v. United States, 314 F.2d 298 (10th Cir. 1963); Bradley v. United States, 262 F.2d 679 (10th Cir. 1959). In Johnson v. United States, 318 U.S. 189, 63 S. Ct. 549, 87 L.Ed. 704 (1943) the Court observed:

"We cannot permit an accused to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him. However unwise the first choice may have been, the range of waiver is wide. Since the protection which could have been obtained was plainly waived, the accused cannot now be heard to charge the court with depriving him of a fair trial. The court only followed the course which he himself helped to chart and in which he acquiesced until the case was argued on appeal." 318 U.S. at 201, 63 S.Ct. at 555.

We affirm Sudduth's conviction and the five year sentence imposed under Count I.