**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Claude Nolan HAROLD, Defendant-Appellant.**

No. 78–5308.

United States Court of Appeals, Fifth Circuit.

Feb. 5, 1979.

---

Albert J. Datz, Jacksonville, Fla., for defendant-appellant.

John J. Daley, Jr., U. S. Atty., Robert S. Yerkes, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and HILL, Circuit Judges.

TUTTLE, Circuit Judge:

The appellant challenges his conviction by a jury on charges of willfully removing from United States Customs custody or control imported merchandise which had not been released by the Customs Service in violation of 18 U.S.C. § 549 and of possession of marijuana in violation of 21 U.S.C. § 844.

The events from which this prosecution arose occurred following the arrival on November 4, 1977, of the Norwegian vessel TYLSA at Blount Island, near the mouth of the St. Johns River in Jacksonville, Florida. Part of this island is maintained by the Jacksonville Port Authority as a ship unloading terminal and part is used for private warehousing. There is a United States Customs Service inspection trailer located near the warehouses on the island.

Upon arrival in Jacksonville, the TYLSA was boarded by customs officials and given permission to discharge her cargo. A portion of the cargo consisted of 297 cartons of Japanese china and 120 cartons of toy ray guns. On the day of the appellant's arrest, the china was being offloaded but none had been inspected or authorized to be delivered to the consignee by customs officials.

The appellant was employed by a private company as a dock foreman on Blount Island. He was in charge of a three man crew whose purpose was to unload or "strip" the contents from very large containers. After being taken from the ships, these large containers are placed in an open "stripping" area, unsealed, and the contents stacked on wooden pallets to be taken by forklifts into a warehouse.

On November 7, 1977, the appellant and his crew were "stripping" boxes of china

from the TYLSA's cargo containers. During the morning, the appellant was operating a forklift to remove the loaded pallets of merchandise from the containers, which then were taken to a warehouse and placed in a fenced enclosure, used for the storage of highly pilferable goods. A union "checker" and a Jacksonville Port Authority representative inventoried the boxes of merchandise as they were placed in the security enclosure. After all of the pallets had been deposited in the warehouse, the "checkers" noted that five cartons were missing.

At approximately 11:20 a. m., the chief of security for the port authority received a telephone call from a known, undisclosed informant advising him that some of the cartons of china from the TYLSA containers had been wrongfully placed in the pump house area of a large, private warehouse adjacent to the warehouse where the merchandise was supposed to have been placed. The security officer obtained the assistance of a customs agent in setting up a surveillance of the area where the boxes of china had been placed. At approximately 12:10 p. m., the security officer heard a forklift approach and saw the appellant go to the doorway and look inside the area where the boxes were located. The appellant then left and the officer heard the forklift drive away; however, several minutes later the officer heard an automobile approach and observed the appellant as he took four of the five cartons of china from the building out to his car. As the officer emerged from his surveillance location, he saw the appellant placing one of the boxes into the trunk of his car. As the appellant was placing a second box in the trunk, the officer identified himself and arrested the appellant. The customs agent gave the appellant the *Miranda* warning and took him first to the customs inspection trailer at Blount Island and then to the downtown customs office.

The appellant's vehicle was seized and inventoried. A small quantity of marijuana and two toy ray guns from the TYLSA cargo were discovered in the car.

At trial, the defense was two pronged. First, the appellant explained that the customary place to park his forklift was next to the warehouse which the officers had under surveillance and that it was also customary, although against company instructions, for employees to use this area to urinate, instead of going to the facilities offered for that purpose some distance away. He testified that upon entering the warehouse to urinate, he observed the cartons and felt it was his duty to take them to his employer, and he was arrested while removing them for that purpose. The defense also contended that, under the circumstances, there had been no removal from United States Customs custody or control.

On appeal, the paramount issue involves the definition of the statutory language "unlawfully removes any merchandise . . . in customs custody or control."[1] This issue was crystallized before trial when the appellant unsuccessfully moved to dismiss the indictment, and then moved for a bill of particulars, alleging that the indictment failed to define this language with sufficient precision for him to prepare his defense adequately. The same issue is raised here in a variety of forms. First, the appellant again contends that the indictment should have been more specific; or at least, that his request for such specificity in the motion for a bill of particulars should have been granted. He next alleges that the instruction to the jury gave an incorrect standard of law in defining "customs custody" as indirect or constructive custody rather than direct, actual possession and in applying a "theft theory" to the "constructive" custody interpretation, which the ap-

1. 18 U.S.C. § 549, states in pertinent part:

Whoever, maliciously enters any bonded warehouse or any vessel or vehicle laden with or containing bonded merchandise with intent unlawfully to remove therefrom any merchandise or baggage therein, or *unlawfully removes any merchandise* or baggage in

such vessel, vehicle, or bonded warehouse or *otherwise in customs custody or control*;
. . . Shall be fined not more than $5,000 or imprisoned not more than two years, or both.
(Emphasis supplied.)

pellant contends is "inconsistent." Finally with respect to this issue, the appellant contends that the evidence of removal was insufficient because there was no proof that the merchandise was ever in the custody or control of customs; or alternatively, that there was no removal because the merchandise was never taken from the general area over which customs had authority to control.

▮ The appellant's first contention concerning the sufficiency of the indictment and failure to grant the motion for a bill of particulars is without merit. The indictment charges that the defendant knowingly, willfully and unlawfully removed from United States Customs' custody and control five cases of imported china which had not been released by the Customs Service. These allegations, if taken as true, clearly state a criminal offense. *United States v. Cadillac Supply Company*, 568 F.2d 1078, 1082 (5th Cir. 1978). The motion to dismiss was based on the allegation that "United States Customs' custody and control" is a generic term, not particularized in the indictment. The appellant claims that his defense was based on an assumption that removal from customs custody or control requires actual removal from an enclosed customs area, and that it was therefore harmful to his defense to be denied a specific definition of this element of the offense. This argument borders on the frivolous. The protection that we grant against a faulty indictment does not protect a defendant from a faulty defense; confusion over interpretation of the law cannot be blamed on the indictment. There is no question that the appellant knew what the crime was with which he was charged and there was no danger of the appellant being prosecuted a second time for the same offense. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Therefore, we conclude that the indictment was valid and that it was "a plain, concise and definite written statement of the essential facts constituting the offense charged" as required by Rule 7(c), Fed.R.Crim.P. Further, the trial court's denial of the appellant's motion for a bill of particulars was

within its sound discretion and no abuse of discretion was shown. *United States v. Sherriff*, 546 F.2d 604 (5th Cir. 1977).

The appellant's objection to the jury instructions concerning removal from customs custody or control puts the meaning of this statutory language more squarely before the court than did the objection to the indictment. The trial court gave the following instructions concerning customs custody which, in part, tracks 19 U.S.C. § 1499:

> Imported merchandise comes into Customs custody at the moment of its arrival in this country. Imported merchandise required by law or regulations made in pursuance thereof to be imported [sic], examined, or appraised shall not be delivered from Customs custody until it has been inspected, examined, or appraised, and is reported by the appraiser to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States.

After this instruction defining customs jurisdiction, the court went on to define the removal element of the crime:

> Removal of goods from Customs custody or control is the movement of property in Customs custody or control with felonious intent. Any appreciable change of the location of the property with felonious intent, whether there is actual removal of it from the owner's premises or not, constitutes the removal element of the offense.

The appellant contends that the first instruction, defining customs jurisdiction, was erroneous because it gave a broad, constructive meaning to customs custody, and he claims the second instruction defining removal by a common law theft or larceny theory was improper and inconsistent in light of the constructive custody instruction. The gist of his argument is that since Congress made theft from an interstate or foreign shipment a crime under 18 U.S.C. § 659, then to employ § 549 to prosecute him for a form of general theft renders § 659 redundant. The appellant argues that to find a different Congressional pur-

pose in enacting the two sections, the removal from customs custody prohibited by § 549 must be read more restrictively, applying the statute only to merchandise in a vessel, vehicle, bonded warehouse, or some other direct, physical containment by customs. It is this argument for a restrictive reading of removal from customs custody that forms the basis for this appeal. The appellant concedes that the first instruction would be proper if the statute is interpreted broadly and his bare claim of inconsistency between constructive custody and a theft theory of removal is both unexplained and unsupported. Therefore, the resolution of this issue turns solely on the interpretation of "customs custody or control."

The parties agree that there is a paucity of pertinent authority on this issue. It appears that the only reported case on point is the Fourth Circuit decision in *Mungo v. United States*, 423 F.2d 1351 (4th Cir. 1970). In a prosecution for tampering with and stealing a case of whiskey in customs control, the court distilled from an examination of the available related case law and relevant customs statutes a constructive custody concept that imported goods are in customs custody from the moment of their arrival in port until their formal release by the Customs Service.

The court in *Mungo* found guidance in the early Supreme Court decision of *Harris v. Dennie*, 28 U.S. (3 Pet.) 292, 7 L.Ed. 683 (1830), where, in litigation involving the Revenue Collection Act of 1799, the Court stated:

> From the moment of their arrival in port, the goods [imported from a foreign country] are, in legal contemplation, in the custody of the United States; and every proceeding which interferes with, or obstructs, or controls, that custody, is a virtual violation of the provisions of the act.

In *Harris*, the question was whether or not certain imported goods were subject to attachment by a state sheriff. While we, of course, realize that in holding the goods could not be attached because they were still under the jurisdiction of the United States until released by a customs officer the Supreme Court was dealing with a different statute applied to a distinguishable factual setting, we agree with the Fourth Circuit that the reasoning of the Court is enlightening and helpful.

In *Mungo*, the court next examined related statutory language which it felt evidenced a statutory scheme to broadly protect the collection of customs duties and impliedly recognized the concept that foreign imports are in constructive custody from the moment of their arrival in this country until they are formally released as a means to effectuate that policy. For example, 19 U.S.C. § 1448(a) directs that merchandise may not be offloaded from a vessel arriving from a foreign port until a permit has been issued by the customs collector; and thereafter the merchandise must remain at the place of offloading until entry is made for such merchandise and a permit for its delivery is granted.

Similarly, 19 U.S.C. § 1484(j), seems to have been adopted in recognition that foreign imports must be in constructive custody upon arrival in this country to protect the collector of customs in releasing the merchandise from custody to the person claiming the right to receive it. Section 1484(j) states:

> Merchandise shall be released from customs custody only to or upon the order of the carrier by whom the merchandise is brought to the port at which entry is made, except that merchandise in a bonded warehouse shall be released from customs custody only to or upon the order of the proprietor of the warehouse.

By specific reference to merchandise which has been placed in a bonded warehouse while at the same time including a specific reference to unwarehoused merchandise in customs custody, Congress has impliedly shown its intention that foreign goods, even though unwarehoused, are to be in constructive customs custody from the moment of their arrival in the United States until they are formally released.

Another federal statute, 19 U.S.C. § 1499, further reveals the intent of Congress that

the Customs Service should have a broad constructive custody of all imports when it states:

> Imported merchandise, required by law or regulations made in pursuance thereof to be inspected, examined, or appraised, *shall not be delivered from customs custody*, except under such bond or other security as may be prescribed by the Secretary of the Treasury to assure compliance with all applicable laws, regulations, and instructions which the Secretary of the Treasury or the Customs Service is authorized to enforce *until it has been inspected, examined, or appraised and is reported by the appraiser to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States.*

(Emphasis supplied.)

■ For these reasons, we are persuaded that Congress intended a broader definition than the direct, physical containment theory advanced by the appellant. We follow the Court of Appeals for the Fourth Circuit in holding that imported goods are in the constructive custody of customs from the moment of their arrival in a United States port until their formal release by the Customs Service, regardless of whether customs has actual, physical possession. The statute reads "or otherwise in customs custody *or* control," (emphasis added), obviously granting broad criminal jurisdiction under that section to goods in either custody *or* control.

■ As applied to these facts, there can be no question that this merchandise was in customs custody. Although it is arguable that the merchandise was still in actual customs *control* or possession on Blount Island, it is obvious that the merchandise was in the constructive *custody* of customs when discovered in the appellant's car because it had not yet been formally released by the Customs Service. Although the appellant is correct in claiming that the government could easily have charged and convicted him under the general theft statute, 18 U.S.C. § 641, without having the difficulty of proving the customs custody jurisdictional element, this does not bar the government's prosecution under § 549, and it does not render § 641 totally superfluous, as the appellant contends.

■ As we have stated, the appellant's claim that the court's removal instruction applied a theft theory which was inconsistent and improper given the constructive custody instruction is neither explained nor supported. The two instructions are obviously not mutually exclusive. The first instruction defined customs' jurisdiction and the second defined "removal" of merchandise from customs custody, implying a common law theft or larceny theory. Although there are no common law offenses against the United States, it is a well established practice to give words their common law meanings where a federal criminal statute uses a common law term without defining it. *United States v. Turley*, 352 U.S. 407, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957). The common law has long recognized the concepts of asportation and constructive custody and we do not find it unreasonable to adopt these common law concepts in construing the statutory meaning of "removal" from "customs custody" as used in 18 U.S.C. § 549. *See Rainwater v. United States*, 443 F.2d 339 (5th Cir. 1971) (where in a case involving theft of government property in violation of 18 U.S.C. § 641, the court approved this asportation theory.)

■ Since we have held that the court properly instructed the jury concerning the "removal" of merchandise from "customs custody or control," then there was clearly sufficient evidence to sustain the verdict. Under the asportation theory, any appreciable change of location with felonious intent is sufficient, regardless of whether there is actual removal from the premises.

We now turn our attention to the appellant's contention that the federal statute which prohibits possession of small quantities of controlled substances, 21 U.S.C. § 844, should not be interpreted to permit convictions based on so small an amount of marijuana that it could not be used for its common purpose.

The appellant's automobile was seized following his arrest and was searched to inventory any personal items that might be found. Several marijuana seeds and a small amount of marijuana were found in various places in the car. A chemist, testifying on behalf of the government, identified the substance as .289 grams of marijuana. Although this is a small amount of marijuana, it is well established that under federal law a conviction will be upheld where *any* measurable amount of *any* controlled substance is found. *United States v. Curbelo*, 423 F.2d 1204 (5th Cir. 1970); *United States v. Spann*, 515 F.2d 579 (10th Cir. 1975); *United States v. Nelson*, 499 F.2d 965 (8th Cir. 1974); *United States v. Sudduth*, 458 F.2d 1222 (10th Cir. 1972). The statute makes no distinction between the relative harmfulness of the drug involved; it prohibits the possession of any controlled substance. Further, no usability test has been heretofore recognized, but rather a "trace or scintilla" has been held to be sufficient. *Curbelo, supra* at 1205; *Spann, supra* at 583. Thus, we affirm the appellant's conviction on Count Two.

Finally, we have given consideration to the other arguments raised by the appellants, but we conclude that these issues do not merit separate discussion.

AFFIRMED.