667 F.2d 1171
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE 1976 MERCEDES 450 SLC, Etc., Defendant-Appellant.
 No. 80-5158.
 United States Court of Appeals,
Fifth Circuit.
 Unit B*
Feb. 16, 1982.
 
 Datz, Jacobson & Lembcke, Albert J. Datz, Jacksonville, Fla., for defendant-appellant.
 Robert S. Yerkes, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.
 Before JONES, FAY and HENDERSON, Circuit Judges.
 JONES, Circuit Judge:
 
 
 1
 Claude Harold was convicted in the district court on charges of unlawfully removing five cartons of chinaware from United States Customs' custody and control in violation of 18 U.S.C. § 549 (1976).[1] Following Harold's conviction, the government commenced these 19 U.S.C. § 1595a (1976) proceedings to obtain the forfeiture of a Mercedes-Benz automobile Harold used in the theft. On cross motions for summary judgment, the district court granted the government's motion and ordered the automobile condemned as forfeited.
 
 
 2
 In this appeal, Harold claims that he was entitled to summary judgment on two grounds: first, his automobile was not subject to forfeiture under section 1595a because the chinaware he attempted to steal had not been and was not being introduced into the United States contrary to law; second, the ten and one-half month delay between the seizure of the automobile and the institution of these forfeiture proceedings unjustifiably deprived Harold of his right to due process and bars forfeiture in this case. Harold claims that if he is not entitled to summary judgment, he is entitled to proceed to trial before a jury because a material fact is in dispute.
 
 
 3
 For the reasons stated below, we find that none of Harold's claims has merit. We therefore affirm.
 
 I.
 
 4
 On November 4, 1977, the TYLSA, a Norwegian cargo ship, arrived at the Jacksonville, Florida, Port Authority facility on Blount Island. After properly making entry and presenting the required documentation to U. S. Customs, the TYLSA received permission to offload cargo. On November 7, a portion of this cargo, including 297 cartons of Japanese chinaware, was brought ashore.
 
 
 5
 Harold, a Port Authority employee, and three others were working on the dock when the cargo was offloaded. They "stripped" the cartons of chinaware from the containers in which they had been shipped and stacked them on wooden pallets. The cartons were then taken to a warehouse where Customs officers were to examine and appraise the chinaware and assess a duty to be paid by the consignee. See 19 U.S.C. § 1499 (1976). Five of these cartons never reached the warehouse, however. Instead, they were diverted to the pumphouse of an adjacent warehouse where they were hidden.
 
 
 6
 Customs and Port Authority security officers soon discovered the five cartons in the pumphouse and set up surveillance of the area. At approximately 12:10 p. m. on November 7, Harold drove up to the site in a forklift, went into the pumphouse, and then drove away. Within minutes he returned to the area in his Mercedes-Benz automobile. As a Port Authority security officer looked on, Harold went into the pumphouse and then emerged with four cartons of chinaware which he placed at the rear of his Mercedes. He opened the trunk of the car and was loading the cartons into it when he was arrested. Harold was subsequently indicted under 18 U.S.C. § 549 (1976), which prohibits the unlawful removal of merchandise from Customs' custody and control.
 
 
 7
 In his criminal jury trial, which began March 20, 1978, Harold raised two defenses: first, he was not stealing the cartons, but was in the process of retrieving them for proper storage by Customs; second, the goods were not in the control of Customs, and he therefore had not acted in violation of 18 U.S.C. § 549. These defenses were rejected and Harold was convicted. He appealed, and in February, 1979, we affirmed his conviction. United States v. Harold, 588 F.2d 1136 (5th Cir. 1979).
 
 
 8
 Sometime during or shortly after his trial, Harold received a Notice of Seizure from Customs informing him of Customs' intent to seek forfeiture of his Mercedes and of his right to petition for administrative relief. On April 18, Harold filed such a petition, and Customs instituted an investigation of the matter. On May 18, 1978, as the result of that investigation, Customs amended the Notice of Seizure. In June, Harold responded with an amended petition for administrative relief, and Customs again investigated the matter. On July 31, 1978, Customs completed its investigation and on August 2, 1978, Customs denied Harold's petition. On September 20, 1978, these forfeiture proceedings commenced.
 
 
 9
 In his answer to the government's complaint, Harold made no claim that the government's delay in bringing suit denied him due process and thus required dismissal of the case with prejudice. Harold simply joined issue with the government by denying what the government alleged, that he had introduced the chinaware into the United States contrary to law. Harold's answer also suggested that the reversal of his criminal conviction, then pending on appeal, would foreclose the government's forfeiture claim, implying that a stay of the forfeiture proceedings would be in order. The case laid dormant until five months after Harold's criminal conviction was affirmed by this court and the mandate issued. Harold then amended his answer to the forfeiture complaint to allege that the government's delay in concluding the forfeiture proceedings denied him due process. Both parties moved for summary judgment, and the district court, finding no issue of material fact, entered judgment for the government.
 
 II.
 
 10
 Section 1595a of Title 19, provides, in pertinent part, that:
 
 
 11
 every ... vehicle ... used in, to aid in, or to facilitate ... the importation, bringing in, unlading, landing, removal, concealing, harboring, or subsequent transportation of any article which is being or has been introduced, or attempted to be introduced, into the United States contrary to law, whether upon such ... vehicle, ... or otherwise, shall be seized and forfeited.... (emphasis supplied).
 
 
 12
 In this appeal, Harold admits that he attempted to steal the chinaware and that his conduct was contrary to law within the meaning of the statute.[2] He contends that his Mercedes-Benz is nevertheless immune from forfeiture because the chinaware had already been introduced into the United States lawfully before he attempted to steal it.
 
 
 13
 The question for us is a narrow one: was Harold introducing, or attempting to introduce, the chinaware into the United States when he was arrested by the Customs officers?
 
 
 14
 To determine proper interpretation of "introduced ... into the United States contrary to law," we look to the legislative history of the forfeiture provision. Section 1595a of Title 19 is derived from 19 U.S.C. § 483 (1952) "with no important change in substance." S.Rep. No. 2326, 83rd Cong. 2d Sess. (1954), reprinted in 1954 U.S.Cong. & Adm.News 3900, 3905. Section 483, in turn, was part of the Anti-Smuggling Act of August 5, 1935. Pub.L. No. 74-438, 49 Stat. 517-529 (the Act). This Act, and consequently the present forfeiture statute, was directed at smugglers of large quantities of dutiable goods, primarily alcohol, who sought to "evade our revenue laws," S.Rep. No. 1036, 74th Cong. 1st Sess. 1 (1935), to the extent of some $20 million annually during the 1930's. 81 Cong.Rec. 11937-38 (1935). Such smugglers generally operated from large ships hovering outside the customs waters. These so-called "hovering boats" would offload dutiable merchandise onto small, swift craft that would "introduce" the articles into the United States by making runs to the coast, thus avoiding entirely the Customs revenue laws. See 81 Cong.Rec. 11938 (1935).
 
 
 15
 The teaching of this legislative history, is that dutiable merchandise is "introduced ... into the United States contrary to law" whenever steps are taken to avoid the payment of a Customs duty. Such evasion occurs if the goods are not entered at the Customhouse upon their arrival in the United States, in accordance with 19 U.S.C. § 1433 (1976), see Lee v. Thorton, 398 F.Supp. 970, 973-74 (D.Vt.1975), rev'd on other grounds, 538 F.2d 27 (2d Cir. 1976); are not declared; or if declared, are undervalued. See 19 U.S.C. §§ 1484 and 1485 (1976). See also 18 U.S.C. § 545 (1976) (it is unlawful clandestinely to introduce merchandise into the United States that ought to have been declared or invoiced). The payment of duties is also avoided when the goods are stolen from the Customhouse, as in this case.
 
 
 16
 Harold's theft, had it succeeded, would have deprived the United States of the revenue lawfully due it on the chinaware. Harold had no intention of paying the duty, and had the theft been consummated, the consignee would have been relieved of its obligation to pay such a duty. 19 U.S.C. § 1563 (1976). Congress sought to remedy this situation by passing the forfeiture statute. The statute reaches one who deprives the United States of revenue by stealing merchandise just as it reached the rum runner who avoided the Customhouse altogether. The district court correctly held that Harold's theft was an attempt to introduce dutiable merchandise into the United States contrary to law.
 
 III.
 
 17
 Harold argues that the district court should have dismissed this case because of the ten and one-half month delay between the government's seizure of his vehicle and its commencement of these proceedings denied him due process of law.
 
 
 18
 Harold had no constitutional right to a hearing prior to the seizure of his Mercedes. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). The government did not have unfettered discretion, however, to choose when to provide Harold an opportunity to retrieve his automobile through a judicial proceeding. See United States v. Thirty-Six Thousand, One Hundred Twenty-Five Dollars ($36,125.00) in U.S. Currency, 510 F.Supp. 303, 306 (E.D.La.1980), aff'd. 642 F.2d 1211 (5th Cir. 1981); United States v. Eight Thousand Eight Hundred Fifty Dollars ($8,850.00), 645 F.2d 836, 839 (9th Cir. 1981).[3] Rather, due process required that the government proceed seasonably, so that Harold's right to contest the seizure of his automobile would not be unduly prejudiced. See United States v. $36,125.00 in U.S. Currency, 510 F.Supp. at 307; United States v. $8,850.00, 645 F.2d at 839; Ivers v. United States, 581 F.2d 1362, 1368 (9th Cir. 1978); United States v. One (1) 1972 Wood, 19 Ft. Custom Boat, etc., 501 F.2d 1327, 1329 (5th Cir. 1972) (per curiam). In this case, we think the government sought forfeiture in a timely fashion.
 
 
 19
 The government did not seek forfeiture while Harold's criminal case was pending in the district court. That criminal case, of course, took precedence and required prompt judicial action. Had the government pursued forfeiture at the same time, it is probable that Harold would have claimed that his defense in the criminal case was being prejudiced. In that case, he contended that the chinaware was not in Customs' custody at the time of his arrest, and thus he could not be convicted of stealing property from the Customs service. In defense of forfeiture, on the other hand, Harold claimed to the contrary, that the property was in Customs' possession.
 
 
 20
 A recent Sixth Circuit case illustrates the point. In United States v. U.S. Currency, 626 F.2d 11 (6th Cir. 1980), the district court had dismissed a forfeiture proceeding because the defendant's vigorous defense of his property through the answering of government interrogatories would have prejudiced his rights in an imminent criminal action arising out of a series of gambling transactions. The appellate court agreed that the defendant would be deprived of putting forth evidence in his behalf in the civil action if he maintained his silence for fear of criminal prosecution, but reversed the action of the district court as too severe; instead the Sixth Circuit instructed the district court to devise a means of accommodating both the criminal and civil cases, suggesting the stay of the forfeiture proceeding until the conclusion of the criminal action as one alternative.
 
 
 21
 In the case before us, the government avoided the prejudice of forcing Harold to raise inconsistent defenses by delaying the institution of forfeiture. Such delay not only removed the possibility of prejudice to Harold, but actually provided proof of his claim in the forfeiture action that the chinaware was in Customs' custody. Since Harold's due process right was not adversely affected by the delay, his claim that the civil case should be dismissed is without merit.
 
 IV.
 
 22
 Harold contends that if he was not entitled to summary judgment, the district court should have set the case down for trial, since a material fact remains to be litigated. That fact to be decided is whether he placed the cartons of chinaware into the trunk of his car before he was arrested. It is not necessary to decide this question to resolve this case.
 
 
 23
 To be subject to forfeiture under section 1595a, a vehicle must be "used in ... aid ... or ... facilitate" the introduction of the dutiable article into the United States contrary to law "whether upon such ... vehicle ... or otherwise...." 19 U.S.C. § 1595a. The statute plainly does not require that the article be found on the vehicle. In this case, it is clear that Harold used his Mercedes in the attempted theft. He drove the car to the pumphouse to steal the cartons of chinaware. He was caught in the process of putting the cartons in the trunk of the car. Whether the cartons actually came to rest in the trunk is immaterial.
 
 The judgment of the district court is
 
 24
 AFFIRMED.
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452-October 14, 1980
 
 
 [1]
 On appeal, we affirmed Harold's conviction. United States v. Harold, 588 F.2d 1136 (5th Cir. 1979)
 
 
 [2]
 Harold's criminal conviction is final and is therefore conclusive in this civil litigation as to issues that were litigated and adjudicated in that prosecution. Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 568, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951); Local 167 of the International Brotherhood of Teamsters v. United States, 291 U.S. 293, 298, 54 S.Ct. 396, 399, 78 L.Ed. 804 (1933). See generally 1B Moore's Federal Practice P 0.418
 
 
 [3]
 Since October of 1978 the constitutional requirement of promptness has been incorporated into the Customs statutes. See 19 U.S.C. § 1603 (1979 Supp.) ("Whenever a seizure of merchandise ... is made ... and legal proceedings by the United States Attorney in connection with such seizure ... are required, it shall be the duty of the appropriate Customs officer to report promptly such seizure ... to the United States Attorney....")