[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10818
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-00137-WS-B-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAMUEL CURRY, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(February 9, 2017)

Before MARTIN, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Samuel Lavon Curry, Jr. appeals his conviction for possession of a firearm as a convicted felon and his sentence of 84-months imprisonment. The district court imposed this sentence after assessing both a four-level enhancement pursuant to USSG § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony and a two-level enhancement pursuant to § 3C1.1 for obstruction of justice. After careful review, we affirm.

## I.

On June 25, 2015, Curry was indicted on one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Curry pleaded not guilty and proceeded to trial.

At trial, the government called Officers Kevin Kelley and Roland Roberson of the Mobile Police Department to testify about stopping a car that Curry was driving, Terry frisking him, and later discovering a firearm near his person. As relevant to this appeal, Officer Kelley gave the following testimony: Upon witnessing suspicious activity between Curry and James Smith and following Curry's car after Smith got into it, he called Officer Roberson for back-up. Once Officer Roberson got close to the scene, Officer Kelley pulled Curry over because of an expired tag. Curry said his driver's license was suspended, so Officer Kelley returned to his patrol car, confirmed that Curry's license was suspended, and

decided to remove both Curry and Smith from Curry's car so that he could inventory the car and have it towed.

Officer Kelley had Curry get out of his car and conducted an open-palm Terry frisk of his person without going into his pockets. Curry was wearing a thick leather jacket during the search, and Officer Kelley did not feel a firearm during the pat-down. Without handcuffing Curry, Officer Kelley placed him in the driver's side back seat of the patrol car. Kelley then helped Officer Roberson remove Smith from Curry's car and pat him down. Smith was not handcuffed. Just as Officer Roberson was about to place Smith in the back seat, Roberson reported to Officer Kelley that he had seen a firearm wedged between the backseat partition and the doorjamb of Kelley's patrol car. Officer Kelley immediately went to secure Smith and watch Curry so that Officer Roberson could remove the firearm and place it in his own patrol car. He saw the gun before Officer Roberson secured it. Afterwards, the officers detained and searched Curry and Smith more thoroughly, but discovered no other firearms.

Officer Kelley said that the back seat of his patrol car is one solid piece of plastic designed to prevent people from concealing items underneath the back seat, and the government introduced photographs of Officer Kelley's patrol car and the passenger's side back seat. He also said he checked the back seat of his patrol car every day before starting his shift, each time he placed someone in his car, and at

3

the end of each shift.  When conducting his routine checks, he opens the driver's side door to climb into the back seat and searches from driver's side to passenger's side.  Officer Kelley said that on the day he detained Curry, he had checked the back seat and opened the passenger's side door at the beginning of his shift and had found no items.  Further, no one else had been in the back seat before he placed Curry there.

Officer Roberson testified next and largely corroborated Officer Kelley's testimony.  However, his testimony differed in one respect: he said that he secured the firearm immediately after seeing it and then showed it to Officer Kelley while Kelley was still at Curry's car.

At the close of the government's case-in-chief, Curry moved for a judgment of acquittal.  The court denied the motion, and then Curry put on his case.  First, Smith gave his version of the events.  He said Curry picked him up that morning to take him to look at a car that a woman had asked him to repair.  When they arrived at the woman's house, she was not there.  Officer Kelley pulled Curry over as they were leaving.  When Officer Kelley removed Curry from Curry's car, he Terry frisked Curry, handcuffed him, and put him in the back of the patrol car.  During the Terry frisk, Officer Kelley "patted [Curry] all the way around, [and] shook his clothes."  Officer Roberson did the same to Smith and then handcuffed him, put him in the back of Officer Kelley's patrol car, and went back to search Curry's car

4

with Officer Kelley.  Then, the officers transferred Smith from Officer Kelley's car

to Officer Roberson's car and searched him again.  Smith saw one of the officers

go back to Officer Kelley's car and "reach down inside the pocket of the door and

pull something out."  Smith never saw a firearm on Curry, never saw the firearm

that was admitted into evidence, and never knew Curry to have carried or even

owned a firearm.  On cross, Smith testified that he and Curry sat in the back seat of

the first police car for "maybe 5 minutes" and that no firearm was found until the

police officers removed him from the first police car.

Next, fingerprint expert Claiborne Myers testified that no discernible

fingerprints were lifted from the firearm found in Officer Kelley's car.  Finally,

Curry took the stand.  Curry testified that he gave Smith a ride to another house so

that he could check on a car there.  When the car owner did not come to the door,

Smith went back to Curry's car.  As they were leaving, Officer Kelley pulled

Curry's car over.  Officer Kelley asked Curry for his license, and he replied that it

was suspended.  After Officer Kelley asked Curry to exit his car, Kelley searched

him extensively, ran through his pockets, put handcuffs on him, walked him to the

driver's side of Kelley's patrol car, and sat him in the car.  Then, Officer Kelley

searched and handcuffed Smith and sat him down in the back passenger's side of

the patrol car.  Officer Roberson arrived on the scene 15 minutes after Curry was

pulled over, after Curry and Smith had been in the back seat of Officer Kelley's

5

patrol car for about 5 minutes.  Officer Roberson transferred Smith from Officer Kelley's car to his own patrol car, leaving the backseat passenger door to Kelley's car open.  It was not until Officer Roberson came back to Officer Kelley's car to shut the passenger door that he saw the firearm, which was pushed against the back passenger seat on the same side that Smith was sitting.  The first time Curry saw the firearm was when Officer Roberson found it, pulled it out, and asked Curry if he had seen it.  Curry testified that the firearm was not his.  He said he has never owned or possessed a firearm as an adult because he knew the consequences of being a convicted felon in possession of a firearm.

The government called Officer Kelley as a rebuttal witness.  Officer Kelley testified that only a few seconds passed between when he requested assistance from Officer Roberson and when Roberson arrived on scene, as Roberson was only one street over at the time of the call.  He asserted that Curry and Smith were not located in the back seat of his patrol car before Officer Roberson's arrival, and that Smith was not placed in a patrol car until after the firearm was discovered.  Curry moved again for a judgment of acquittal, which the court denied.  The jury found Curry guilty of possession of a firearm by a felon.

Before sentencing, a probation officer circulated a draft presentence investigation report ("PSR"), received objections from Curry and the government, and then prepared a final PSR.  In addition to the facts set out at trial, the PSR

6

found that when Curry's car was inventoried post-arrest, officers discovered a plastic bag containing cocaine powder in the car's cup holder, and that when asked by the officers, Curry admitted the drugs were his. The government knew about these facts before trial, but agreed not to use them in its case-in-chief. Based on these facts, the PSR recommended a four-level enhancement under USSG § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony (here, "Possession of Cocaine"). The PSR also recommended a two-level enhancement pursuant to USSG § 3C1.1 for obstruction of justice based on the government's argument that Curry provided materially false testimony during trial "to contradict the testimony of the police officers." With a total adjusted offense level of 20 and a criminal history category of VI, the PSR found Curry's applicable guideline range to be 70 to 87 months.

Curry objected to both of these enhancements. As to the § 2K2.1(b)(6)(B) enhancement, Curry adopted and re-alleged his objections to the draft PSR, where he objected to the factual assertions that "officers found a plastic bag of powder cocaine in the vehicle's cup holder" and that he admitted "the drugs" were his. He also objected on the grounds that the white powder was not cocaine or another controlled substance and that there was no nexus between the powder and the firearm. However, he did admit that there was a white-powder substance in his

car.  As to the § 3C1.1 enhancement, Curry objected to the factual assertion that he obstructed justice by giving false testimony at trial.

At the sentencing hearing, Curry argued the § 2K2.1(b)(6)(B) enhancement should not apply because the government failed to prove by a preponderance of the evidence that the substance found in his car was cocaine.  He clarified that "he admitted that th[e] substance was his, but he did not admit that it was drugs."  The government responded in part by submitting into evidence a second toxicology report showing that the substance contained a trace amount of cocaine.  Curry also argued against the obstruction enhancement and stood behind his trial testimony.

The court denied both of Curry's objections.  As to the obstruction enhancement, the court specifically stated, "I heard Mr. Curry's testimony along with the jury.  I did not find it credible.  I found it to be offered to try to dissuade the jury from convicting him and, obviously, it falls within the meaning of obstruction of justice within the meaning of the guidelines."  The court then sentenced Curry to 84-months imprisonment.

## I.

Curry makes three arguments on appeal.  First, he says there was insufficient evidence to support the jury's finding that he constructively possessed the firearm found in Officer Kelley's patrol car. We review de novo whether sufficient evidence in the record supports a jury's verdict in a criminal trial, "viewing the

evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict." United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). We will not reverse a jury's finding of guilt "unless no reasonable trier of fact could find guilt beyond a reasonable doubt." United States v. Farley, 607 F.3d 1294, 1333 (11th Cir. 2010). Further, we "must accept a jury's inferences and determinations of witness credibility." United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004).

Under 18 U.S.C. § 922(g)(1), it is unlawful for a felon to possess a firearm, and the government must prove "three distinct elements" to sustain a conviction: (1) that the defendant was a convicted felon; (2) that the defendant knew he was in possession of a firearm; and (3) that the firearm affected or traveled in interstate commerce. Wright, 392 F.3d at 1273 (quotation omitted). As for the possession element—the only disputed element at Curry's trial—the defendant's possession can be either actual or constructive and can be proven by direct or circumstantial evidence. Id. However, "[m]ere physical proximity to [a firearm] is not in itself sufficient to establish either actual or constructive possession of the [firearm]." United States v. Rackley, 742 F.2d 1266, 1272 (11th Cir. 1984).

Here, the district court did not err in determining that the trial evidence was sufficient to support the jury's finding that Curry constructively possessed the firearm found in Officer Kelley's patrol car. Kelley testified that (1) he thoroughly

checked the back seat of his patrol car every day before starting his shift, each time he placed someone in his car, and at the end of his shift; (2) on the day Curry was arrested, Kelley conducted this same check before starting his shift and had no other back-seat passengers before Curry; (3) he conducted a brief Terry search on Curry while Curry was wearing a thick leather jacket and then, without handcuffing, placed Curry in the driver's side back seat of Kelley's patrol car; and (4) as Officer Roberson was about to place Smith in Kelley's patrol car, Roberson reported to Kelley that he saw the firearm wedged in between the backseat partition and the doorjamb. Officer Roberson's testimony corroborated these details and the government also submitted photographs of the passenger's side back seat of Officer Kelley's car. This evidence supports a reasonable inference that Curry had actually possessed the firearm at the time of the stop.

Further, the jury was entitled to reject Smith's and Curry's testimony that the Terry frisk was thorough, that they were handcuffed, that they both sat in Officer Kelley's car for a period of time, and that Curry never possessed the firearm. See Wright, 392 F.3d at 1273–74. Viewing the evidence in the light most favorable to the government and drawing all reasonable factual inferences in favor of the jury's guilty verdict, reasonable triers of fact could find beyond a reasonable doubt that Curry had the firearm on his person before being placed in Officer Kelley's car. See Farley, 607 F.3d at 1333. Thus, we affirm Curry's conviction.

II.

Second, Curry argues the district court clearly erred in assessing the § 2K2.1(b)(6) enhancement because (1) it applied the enhancement based on information found in the PSR that was not presented or admitted during trial; and (2) it used facts relating to the white powder to apply the enhancement even though the government specifically agreed not to pursue any inquiry into the white power at trial.  In Curry's view, there was not enough evidence for the district court to find that Curry possessed drugs.

USSG § 2K2.1(b)(6)(B) provides a four-level enhancement where a defendant "possessed any firearm or ammunition in connection with another felony offense."  A district court's determination that a defendant used a firearm in connection with another felony offense is a factual finding, and is thus reviewed for clear error.  United States v. Whitfield, 50 F.3d 947, 949 & n.8 (11th Cir. 1995) (per curiam).

A district court's factual finding is clearly erroneous when a review of the evidence leaves us "with a definite and firm conviction a mistake has been made."  United States v. Dimitrovski, 782 F.3d 622, 628 (11th Cir. 2015).  "The government bears the burden of establishing the facts necessary to support a sentencing enhancement by a preponderance of the evidence."  Id.  A sentencing court "may consider all relevant information, regardless of its admissibility under

11

the rules of evidence." United States v. Onofre–Segarra, 126 F.3d 1308, 1310 (11th Cir. 1997).  This includes "evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the [PSR], or evidence presented at the sentencing hearing." United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989).

The district court did not clearly err in finding that Curry possessed the firearm in connection with a felony drug offense.  First, the government did say it would not pursue a "line of inquiry" about the white powder, but only in its case-in-chief at trial, which sought to prove only that Curry had possessed a gun in violation of 18 U.S.C. § 922(g)(1).  The government did not say it would avoid bringing up the white powder in all other contexts; in fact, it indicated it would do so at trial if Curry took the stand.  Second, although Curry was not indicted or convicted for drug possession, there is no requirement that the other felony offense committed "in connection with" the firearm offense be indicted or result in a conviction, as Curry acknowledged in his briefs.  Third, as proof of Curry's drug possession, the court properly relied on (1) the undisputed statement in the PSR (along with Curry's clarification at sentencing) that Curry "admitted that [the white powder] was his"; and (2) the lab report put into evidence at sentencing that indicated the white powder contained at least a trace of cocaine. See Wilson, 884 F.2d at 1356.  This evidence was sufficient to support the court's finding that it

was more likely than not that Curry was committing a drug felony[1] while in possession of a firearm.

## III.

Finally, Curry argues the district court clearly erred in assessing the obstruction enhancement because the jury simply discredited his testimony. We review a district court's findings of fact concerning an obstruction of justice enhancement for clear error. United States v. Bagwell, 30 F.3d 1454, 1458 (11th Cir. 1994). Further, we "accord special deference to the district court's credibility determinations." United States v. Banks, 347 F.3d 1266, 1269 (11th Cir. 2003).

A district court may grant an enhancement for obstruction of justice if:

(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

USSG § 3C1.1. The commentary to § 3C1.1 provides a non-exhaustive list of conduct warranting an obstruction enhancement, including committing perjury and providing materially false information to a judge. USSG § 3C1.1, cmt. n.4(B), (F).

---

[1] The court could have found Curry to have committed the drug felony of knowingly or intentionally possessing a controlled substance after having a prior drug-related conviction in violation of 21 U.S.C. § 844(a). Federal law allows a drug felony conviction to stand where there is "[a]ny measurable amount of [a]ny controlled substance," even a "trace or scintilla" of the substance. United States v. Harold, 588 F.2d 1136, 1143 (5th Cir. 1979) (quotation omitted). In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

"Perjury here is defined as false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Moran, 778 F.3d 942, 981 (11th Cir. 2015) (quotation omitted).  To avoid "according the enhancement whenever a defendant testifies on his behalf and is found guilty," which would infringe upon the defendant's constitutional right to testify, the district court "must make an independent factual finding that the defendant willfully gave perjured testimony." United States v. Jones, 32 F.3d 1512, 1519 (11th Cir. 1994).  Although specific findings "identifying the materially false statements individually" are preferable, "it is sufficient if the [district] court makes a general finding of obstruction encompassing all the factual predicates of perjury." United States v. Diaz, 190 F.3d 1247, 1256 (11th Cir. 1999).

Here, the district court specifically found that Curry's testimony was not credible and was offered only "to try to dissuade the jury from convicting him." The district court did not clearly err in finding that Curry willfully testified untruthfully at trial where his testimony differed substantially from that of Officers Kelley and Roberson with respect to material facts like whether he and Smith were handcuffed, which patrol car or cars he and Smith were placed in, how thorough Curry's Terry search was, and how much time had passed before Officer Roberson arrived.  Like the jury, which credited the officers' testimony in rendering a guilty

14

verdict, the court determined that Curry lacked credibility, and we defer to that determination here.  See Banks, 347 F.3d at 1269.  Thus, the district court did not clearly err because there was sufficient evidence for it to find, by a preponderance of the evidence, that Curry willfully gave materially false testimony under oath. See Moran, 778 F.3d at 981–82.

**AFFIRMED.**